Mu–Xing WANG, Petitioner–Appellant,

v.

John ASHCROFT, United States Attorney General, United States Immigration and Naturalization Service, Steven J. Farquharson, District Director of the INS, and Gary Cote, Officer in Charge of the INS, Respondents–Appellees.

Docket No. 02–2045.

United States Court of Appeals, Second Circuit.

Argued: Sept. 19, 2002.

Decided: Feb. 6, 2003.

As Amended: March 26, 2003.

Anne Rapkin (Michael J. Boyle, on the brief), Law Office of Michael J. Boyle, New Haven, CT, for Petitioner–Appellant.

Deborah R. Douglas, Assistant United States Attorney (Jeffrey A. Meyer, Assistant United States Attorney, on the brief), for John A. Danaher, III, United States Attorney for the District of Connecticut, United States Attorney's Office, New Haven, CT, for Respondents–Appellees.

Before: FEINBERG, CABRANES, and MAGILL,* Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

Petitioner–Appellant Mu–Xing Wang is a Chinese immigrant who has been ordered removed from the United States to China as a result of his unlawful entry into the United States and his subsequent robbery conviction. Wang sought relief from removal during his deportation proceedings on the ground that his removal would

* The Honorable Frank J. Magill, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

violate the United States' obligations under Article 3 of the United Nations Convention Against Torture ("CAT").[1] The Immigration Judge denied Wang's CAT claim on September 1, 1999, and the Board of Immigration Appeals ("BIA") affirmed the denial on April 25, 2000. Wang subsequently filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241, arguing that (1) he is entitled to relief from deportation under CAT and (2) the Government has violated his due process rights by continuing to detain him during the course of the deportation proceedings without providing him with a bond hearing. The United States District Court for the District of Connecticut (Gerard L. Goettel, *Judge*, of the United States District Court for the Southern District of New York, sitting by designation) held that (1) it had jurisdiction to entertain Wang's CAT claim, (2) Wang was not entitled to relief under CAT because he failed to establish that he is "more likely than not" to be tortured if returned to China, and (3) Wang's continued detention without a bond hearing does not violate his procedural due process rights.

## I. BACKGROUND

### A. *Relevant Law*

The United Nations Convention Against Torture has been in effect in the United States since November 20, 1994.[2] Article 3 of the Convention provides in relevant part that "[n]o State Party shall expel, return . . . or extradite a person to another State where there are substantial grounds

for believing that he would be in danger of being subjected to torture." In order to implement this provision, Congress passed the Foreign Affairs Reform and Restructuring Act of 1988 ("FARRA"), Pub.L. No. 105–277, div. G, Title XXII, § 2242, 112 Stat. 2681–822 (Oct. 21, 1998) (codified as Note to 8 U.S.C. § 1231), which states that

> [i]t shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States.

FARRA § 2242(a).

FARRA § 2242(b) provides that "the heads of the appropriate agencies shall prescribe regulations to implement the obligations of the United States under Article 3 of the United Nations Convention Against Torture[.]" In accordance with § 2242(b), the Justice Department, after the requisite rule-making proceedings, promulgated a series of regulations implementing FARRA. *See* 8 C.F.R. §§ 208.16–18 (2002). These regulations require the Immigration and Naturalization Service ("INS") to grant protection under CAT whenever it determines that an "alien is more likely than not to be tortured in the country of removal," 8 C.F.R. § 208.16(c)(4), but the burden of proof is on the applicant to prove that he or she is more likely than not to be tortured if

---

**1.** The Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984); 23 I.L.M. 1027 (1984).

**2.** The U.S. Senate ratified the Convention in 1990, *see* 136 Cong. Rec. S10091, S10093

(daily ed. July 19, 1990), the instrument of ratification was deposited with the United Nations in October 1994, and the Convention entered into force for the United States in November 1994. *See* Regulations Concerning CAT, 64 Fed.Reg. 8478, 1999 WL 75823 (Feb. 19, 1999) (Background).

removed, 8 C.F.R. § 208.16(c)(2). Torture is defined as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed, ... or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). The regulations further provide that "[t]orture is an extreme form of cruel and inhuman treatment," 8 C.F.R. § 208.18(a)(2), and "[i]n order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering," 8 C.F.R. § 208.18(a)(5).

Additionally, the regulations expressly state that "[t]orture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions." 8 C.F.R. § 208.18(a)(3). Lawful sanctions include "judicially imposed sanctions and other enforcement actions authorized by law, including the death penalty," but they "do not include sanctions that defeat the object and purpose of the Convention Against Torture to prohibit torture." *Id.*

■ Accordingly, an alien is not entitled to CAT relief unless he can prove that, upon being returned to his country of origin, he is more likely than not to suffer intentionally-inflicted cruel and inhuman treatment that either (1) is not lawfully sanctioned by that country or (2) is lawfully sanctioned by that country, but defeats the object and purpose of CAT.

### B. *Procedural History*

Wang, a thirty-one-year old native and citizen of China, entered the United States in June 1993 without being lawfully admitted or paroled. On July 10, 1995, he was convicted in the Superior Court in New Haven, Connecticut of two felonies: Robbery in the First Degree and Unlawful Restraint in the First Degree, in violation of Connecticut General Statute §§ 53a–134(a)(4) and 53a–95, respectively. He was sentenced to a term of imprisonment of ten years (five years to be served, five years to be suspended) on the robbery conviction and one year on the unlawful restraint conviction.

Wang was serving his criminal sentence when, on April 25, 1997, the INS instituted removal proceedings against him pursuant to §§ 212(a)(6)(A)(i)[3], 237(a)(2)(A)(i)(I),[4] and 237(a)(2)(A)(iii),[5] of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1182(a)(6)(A)(i), 1182(a)(2)(A)(i)(I), 1227(a)(2)(A)(i)(I), (iii) (1994), based on his

---

**3.** Section 212(a)(6)(A)(i) of the INA provides in relevant part that "an alien present in the United States without being admitted or paroled ... is inadmissible." 8 U.S.C. §§ 1182(a)(6)(A)(i).

**4.** Section 237(a)(2)(A)(i)(I) of the INA provides:

> Any alien who—
> (I) is convicted of a crime involving moral turpitude committed within five years ... after the date of admission, and

> (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable.

8 U.S.C. § 1227(a)(2)(A)(i)(I).

**5.** Section 237(a)(2)(A)(iii) of the INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii).

status as an alien present in the United States without having been admitted or paroled and upon his status as an alien ineligible for parole by the INS as a result of his conviction for a crime of moral turpitude and an aggravated felony. Following a hearing before an Immigration Judge on January 12, 1998 (at which Wang appeared *pro se*), Wang was ordered removed to China pursuant to § 237(a)(2)(A)(iii) because he had been convicted of an aggrated felony, pursuant to § 237(a)(2)(A)(i)(I), because he had been convicted of a crime of moral turpitude,[6] and pursuant to § 212(a)(6)(A)(i), because he was present in the United States without being admitted or paroled.

Wang appealed this decision to the BIA, asking for political asylum[7] and withholding of deportation under CAT on the ground that, if returned to China, he would be executed as a traitor for deserting the Chinese Army and his family would be severely persecuted for aiding in his desertion. The BIA remanded the case on September 17, 1998 because the Immigration Judge had failed to inform the parties of the legal basis for his decision on the CAT and asylum claims in his January 12, 1998 order.

On remand, the Immigration Judge held another hearing, and, on October 29, 1998, he issued a decision concluding that, because Robbery in the First Degree is an aggravated felony under § 101(a)(43)(G) of the INA, 8 U.S.C. § 1101(a)(43)(G),[8] Wang is ineligible for a waiver of inadmissibility pursuant to INA § 212(c), 8 U.S.C. § 1182(c). The Immigration Judge held further that Wang was not eligible for any other form of relief from deportation (presumably including CAT relief) and ordered him deported to China.

Wang again appealed his removal order to the BIA. On April 7, 1999, the BIA issued a decision upholding the Immigration Judge's determination that Wang was ineligible for a waiver of inadmissibility under INA § 212(c) on the ground that, prior to the initiation of removal proceedings against Wang, § 212(c) had been repealed by the Illegal Immigration Reform and Immigrant Responsibility Act, ("IIRIRA"), § 304(b), Pub.L. No. 104-208, sec. 803, 110 Stat. at 3009-3597 (1996) (codified at Note to 8 U.S.C. § 1101). The BIA also held that Wang was ineligible for asylum and withholding of removal under INA § 208, 8 U.S.C. § 1158,[9] and INA § 241, 8

**6.** As we have previously noted, "the term 'moral turpitude' is not defined anywhere in the INA and ... the INA's legislative history sheds no light on Congress's inten[ded meaning of the term]." *Michel v. INS*, 206 F.3d 253, 262 (2d Cir.2000). We have held, however, that "corrupt scienter is the touchstone of moral turpitude." *Id.*at 263 (citing *Hamdan v. INS*, 98 F.3d 183, 186 (5th Cir.1996) ("Moral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.")).

**7.** Wang had previously filed two petitions for political asylum, but neither of these earlier

applications mentioned the alleged physical torture by the military that is the subject of his most recent asylum application as well as his CAT claims.

**8.** INA § 101(a)(43)(G) provides that the term "aggravated felony," as used in the INA, includes "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G).

**9.** INA § 208(b)(2)(A)(ii) forecloses asylum where the INS determines that "the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States," 8 U.S.C. § 1158(b)(2)(A)(ii), and INS

U.S.C. § 1231 (formerly § 1251),[10] because he had been convicted of an aggravated felony for which he was sentenced to more than five years of imprisonment. Additionally, the BIA found that, at the time of his decision on October 29, 1998, the Immigration Judge correctly determined that he did not have authority to entertain Wang's claim for CAT relief because there was no legislation implementing Article 3 of CAT. But, because Congress had subsequently enacted FARRA, which instructs the Attorney General to adopt regulations implementing the United States' obligations under Article 3 of CAT, and because the Attorney General had published interim rules pursuant to FARRA, the BIA remanded the case to the Immigration Judge for consideration of Wang's CAT claim.

On August 18, 1999, the Immigration Judge held a hearing to address Wang's claim for CAT relief.[11] During this hearing, Wang (now represented by counsel) testified that, while still living in China, he had been drafted into the Chinese military. He asserted that he lived on a military base where he was forced to sleep on wooden boards on the ground, there were no showers, and the food supply and medical care were insufficient. Wang testified that, in 1990, he tried to escape, but was captured and returned to the base, where he was beaten in the head with a rifle butt, kicked, and punched until he became unconscious. He claims that, as a result of this beating, he has scars on his eyes and problems with his vision. Wang testified that, following this incident, he was told by his lieutenant that he would be beaten to death if he ever tried to escape again.[12]

§ 208(a)(2)(B)(i) provides that "[f]or purposes of clause (ii) of subparagraph (A), an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime." 8 U.S.C. § 1158(a)(2)(B)(i).

10. INA § 241(b)(3)(A) states that "the Attorney General may not remove an alien to a country *if the Attorney General decides that* ·the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). But INA § 241(b)(3)(B)(ii) provides that Subsection (A) does not apply to an alien who "having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States," 8 U.S.C. § 1231(b)(3)(B)(ii), and INA § 241(b)(3)(B) states that "[f]or purposes of clause (ii) ... an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have been convicted of a particularly serious crime." 8 U.S.C. § 1231(b)(3)(B).

11. 8 C.F.R. § 208.16(d)(2) provides that "an application for withholding of removal under ... the Convention Against Torture shall be

denied if the applicant falls within section 241(b)(3)(B) of the [INA]." Wang falls into INA § 241(b)(3)(B) because he is "an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years." 8 U.S.C. § 1231(b)(3)(B); *see* Note 10, *ante*. Accordingly, Wang is actually ineligible for withholding of removal under CAT.

Still, Wang may be entitled to some relief under CAT because 8 C.F.R. § 208.17(a) provides that

[a]n alien who: has been ordered removed; has been found under § 208.16(c)(3) to be entitled to protection under the Convention Against Torture; and is subject to the provisions for mandatory denial of withholding of removal under § 208.16(d)(2) or (d)(3), shall be granted deferral of removal to the country where he or she is more likely than not to be tortured.

Thus, if Wang were entitled to protection under CAT, he would be eligible for deferral of his removal to China.

12. To support his argument, Wang also submitted documentary evidence of the "country conditions" in China, including reports on the status of human rights practices in China issued by the United States Department of

During the hearing, the Government asked Wang why he had not mentioned this beating in his earlier applications for asylum, *see* Note 7, *ante*, and why his sister and brother-in-law, whom he claimed were lawful residents of the United States, had not come forward to support his claims. Wang maintained that other people prepared his earlier asylum applications for him because he could not speak or write English, and that he was advised not to tell the INS about his desertion from the Chinese Army. He gave an assortment of explanations for the failure of his relatives to testify on his behalf, including that it was too far for them to travel without missing work, that they could not drive, that they could not speak English, and that they do not like to deal with other people.

On September 1, 1999, the Immigration Judge denied Wang's application for relief under CAT, finding that Wang had not testified credibly and, therefore, had not met his burden of proof in establishing the statutory and regulatory requirements for CAT relief. Accordingly, he once again ordered Wang removed.

Again, Wang appealed his removal to the BIA, and, on April 25, 2000, the BIA affirmed the Immigration Judge's decision and dismissed Wang's appeal. BIA Decision dated April 25, 2000 ("BIA Decision"). In the beginning of its decision, the BIA declared that "we agree with the Immigration Judge that the respondent has not met his burden of proof, but we do not

affirm the Immigration Judge's decision on the basis of an adverse credibility finding." [13] BIA Decision at 2. Instead, the BIA held that

> [i]n light of the regulations implementing the Convention Against Torture, it is incumbent upon the respondent to show that the threats of death were more than the threat of a lawfully imposed sanction under Chinese law that would [not] defeat the purposes of the convention, and the respondent has not established the contours of Chinese law, let alone how the imposition of such a law would defeat the purposes of the Convention Against Torture.

*Id.* at 6. It went on to hold that, "[i]n this case, there is no evidence in the record that China tortures deserters from its military." *Id.* The BIA added that it was "hesitant to ascribe the respondent's characterization of torture to military discipline without more specific evidence," and concluded that, upon the evidence presented, Wang "has not established that it is more likely than not that [he] will be tortured if he is removed to China." *Id.*

On May 24, 2000, Wang filed a petition in this Court for review of the final order of removal, but on August 18, 2000, we approved a Stipulation and Order by the parties to withdraw the Petition for Review from "active consideration." The stipulation provided that the petition would be deemed withdrawn with prejudice if it was not reinstated within thirty days after

---

State, the United Nations Commission on Human Rights, and non-governmental organization Amnesty International. Some of these reports indicated that the Chinese government committed human rights violations including the torture and mistreatment of prisoners. This "background evidence concerning general country conditions" is typically used to "substantiate[ ] the applicant's particular claims." *Diallo v. INS*, 232 F.3d 279, 288 (2d Cir.2000). *See* Note 21, *post*.

13. Later in the decision, however, the BIA did state that it "agree[d] with the Immigration Judge that the failure to present ... information [regarding Wang's previous desertion and the beating and threats that accompanied it] in multiple documents relating to applications [for asylum and withholding of removal] raises serious questions of whether the respondent is exaggerating his past history to meet the qualifications of the statute." *Id.* at 4.

we issued the mandate in *Calcano–Martinez v. INS*, No. 98–4033 (2d Cir. argued Mar. 30, 2000).[14] The mandate in *Calcano–Martinez* issued on June 29, 2001, and Wang never reinstated his petition. Accordingly, pursuant to our order of August 18, 2000 approving of the parties' stipulation, Wang's May 24, 2000 petition for review was dismissed with prejudice as of July 29, 2001.

Wang has been detained by the INS since he was paroled in 1999 from his state criminal sentence. On October 30, 2000, the INS conducted a custody status review hearing, *see* 8 C.F.R. § 241.4, and determined that Wang should not be released from custody. In a written decision, the INS officer justified his decision to detain Wang on the following grounds: (1) his conviction was for a crime of violence in which a weapon was utilized, (2) he failed to submit documentation of his employment history, educational background, vocational training, or close family ties in the United States, (3) the letter from his sponsor with whom he would reside if released gave the same address at which he resided when he was arrested, and (4) his sworn statement that he would "rather stay here in jail than be killed or beaten and starved in China" indicated that he would not surrender to the INS if released. The written decision stated that Wang's custody status would be reviewed again in six months.

On July 18, 2001, Wang filed the instant petition for habeas corpus pursuant to 28

U.S.C. § 2241 in the District of Connecticut, claiming that (1) the BIA erred in denying him relief pursuant to Article 3 of CAT because it erroneously determined that military discipline can never constitute "torture" under CAT and (2) his continued detention without an opportunity for a bond hearing before an Article III court has deprived him of his Fifth Amendment right to due process of law. In response, the INS asserted that (1) the District Court lacked jurisdiction to consider Wang's CAT claim pursuant to § 2241 because FARRA expressly stripped federal courts of such jurisdiction and, in the alternative, (2) Wang's claim is without merit because both the Immigration Judge and the BIA determined that he lacks credibility. The Government also argued that, pursuant to the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678, 699, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), Wang's continued detention without a bond hearing has not violated his constitutional right to due process of law.

On December 20, 2001, the District Court entered judgment in favor of the INS and denied Wang's petition for habeas relief. As an initial matter, the Court held that it had jurisdiction to consider Wang's CAT claims because "nothing in the language of [FARRA] or [its] legislative history . . . indicates that Congress clearly intended to forbid habeas review under § 2241." *Wang v. Ashcroft*, No. 01 Civ. 1353(GLG), 2001 U.S. Dist. LEXIS 21245,

**14.** On June 25, 2001, the Supreme Court affirmed our decision in *Calcano–Martinez v. INS*, 232 F.3d 328 (2d Cir.2000), *aff'd*, 533 U.S. 348, 351–52, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001), in which we held that, under IIRIRA's jurisdiction-stripping provision, Courts of Appeals lack jurisdiction over petitions for direct review filed by aliens who have been ordered deported because they were convicted of aggravated felonies. The Supreme Court made clear, however, that courts may continue to review such claims raised in a petition for habeas corpus. *Calcano–Martinez*, 533 U.S. at 351–52, 121 S.Ct. 2268. Accordingly, pursuant to *Calcano–Martinez*, Wang no longer had a right to petition our Court directly for review of his removal order. Instead, Wang has sought federal court review of his CAT claims by filing the instant habeas petition in the District Court.

at *14 (D.Conn. Dec. 7, 2001). The Court reasoned that "[a]bsent a statement of such clear Congressional intent and guided by the Supreme Court's holding[s] in [*INS v. St. Cyr*, 533 U.S. 289, 299, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) ] and *Calcano–Martinez*, ... this Court has jurisdiction under § 2241 to hear petitioner's legal challenges to his removal." *Id.*

With respect to the merits of Wang's CAT claim, the District Court found no error in the BIA's "unwilling[ness] to ascribe the petitioner's characterization of torture to military discipline without more specific evidence." *Id.* at *16 (internal quotation marks omitted). The Court explained that

> the BIA did not hold that military sanctions can never violate CAT, as petitioner suggests. Instead, it recognized that punishment inflicted upon military personnel for desertion was a lawful sanction. It further found that petitioner had failed to carry his burden of proving that he would face punishment above and beyond that lawfully imposed, or that the . punishment he would receive would defeat the underlying purposes of CAT.

*Id.* at *18. It found no error in either the standard applied by the BIA or the BIA's determination that Wang had failed to carry his burden of proof.

Finally, the District Court evaluated Wang's due process claim under the balancing test set forth by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), for procedural due process challenges.[15] *Id.* at *22–23. It determined that Wang's "interest in freedom from incarceration [wa]s minimal" because Wang's appeal to this Court was his only remaining opportunity for relief from removal. *Id.* at *23. It also found that Wang "does not face the prospect of an extended period of detention without the opportunity for a bail hearing" because the Government stated that it would be prepared to remove Wang within thirty days of a final ruling on his habeas petition. *Id.* at *24. The Court further concluded that "there is little probability of error," that "the Government has a substantial interest in safeguarding the public from criminal aliens and in ensuring that criminal aliens, who have an obvious motivation to flee, will be present when it is time for them to be removed," and that Wang "has already received at least one or more custody status review hearings ... at which it was determined that he posed a threat or danger to the community and a flight risk." *Id.* at *25. For all of these reasons, the District Court held that Wang's continued detention without an opportunity for bail had not deprived him of his Fifth Amendment right to due process of law.

On December 26, 2001, Wang timely filed a notice of appeal.

## II. STANDARD OF REVIEW

█ In reviewing a district court's denial of a habeas petition brought pursuant to 28 U.S.C. § 2241, we examine both the merits of the petition and questions pertaining to subject matter jurisdiction *de*

---

**15.** The Supreme Court held in *Mathews* that, in ruling on procedural due process claims, courts should consider the following factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the prob-

able value, if any, of additional ... safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

424 U.S. at 335, 96 S.Ct. 893.

*novo. Kuhali v. Reno,* 266 F.3d 93, 99 (2d Cir.2001).

## III. CONVENTION AGAINST TORTURE CLAIM

### A. *Jurisdiction*

■ 28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." Unless a treaty is self-executing, however, it does not, in and of itself, create individual rights that can give rise to habeas relief. *See, e.g., Columbia Marine Services, Inc. v. Reffet, Ltd.,* 861 F.2d 18, 21 (2d Cir.1988) ("An action arises under a treaty only when the treaty expressly or by implication provides for a private right of action. The treaty must be self-executing; *i.e.,* it must prescribe rules by which private rights may be determined." (internal quotation marks, alteration, and citation omitted)); *Dreyfus v. Von Finck,* 534 F.2d 24, 30 (2d Cir.1976) ("It is only when a treaty is self-executing, when it proscribes rules by which private rights may be determined, that it may be relied upon for the enforcement of such rights.").

Wang concedes, as he must, that CAT is not a self-executing treaty. *See* 136 Cong. Rec. S17486–01 (daily ed. Oct. 27, 1990) (statement of Sen. Terry Sanford), 1990 WL 168442 (Oct. 27, 1990) (rendering the advice and consent of the Senate in ratifying CAT subject to the declaration that "the provisions of Articles 1 through 16 of the Convention are not self-executing"); *see also* S. Treaty Doc. No. 100–20 (1988), at 2 (letter of transmittal from the President of the United States, recommending that the Senate adopt the accompanying CAT along with "a declaration that the Convention is not self-executing"). Instead, he argues that, by authorizing the Attorney General to promulgate regulations implementing the United States' obli-

gations under CAT, FARRA creates individual rights based on CAT that may be enforced by a writ of habeas corpus.

But, as the Government notes, FARRA expressly states that

> [n]otwithstanding any other provision of law, ... nothing in this section shall be construed as providing any court jurisdiction to consider or review claims under the Convention or this section ... *except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act* (8 U.S.C. [§ ]1252).

FARRA § 2242(d), 112 Stat. 2681–822 (1988) (emphasis added).

Wang argues that this restrictive language is insufficient to repeal habeas jurisdiction with respect to the rights created by FARRA. The District Court agreed, citing, *inter alia,* the Supreme Court's decision in *INS v. St. Cyr,* 533 U.S. 289, 299, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

In *St. Cyr,* the Supreme Court held that the jurisdiction-stripping provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and IIRIRA, *see* AEDPA § 440(d), 110 Stat. 1277; IIRIRA § 304(b), 110 Stat. 3009–597, which prevent certain classes of aliens from obtaining judicial review of their removal orders, do not deprive federal courts of jurisdiction to consider challenges by such aliens to their removal orders raised in § 2241 habeas petitions. The Court held that "[i]mplications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate [a] specific and unambiguous statutory directive to effect a repeal." *St. Cyr,* 533 U.S. at 299, 121 S.Ct. 2271. Because AEDPA and IIRIRA only expressly repeal "judicial review" or "jurisdiction to review" generally, and do not explicitly mention habeas corpus jurisdic-

tion, the Supreme Court held that they did not repeal § 2241 jurisdiction. In particular, even though § 401(e) of AEDPA is entitled "Elimination of Custody Review by Habeas Corpus," the Court found that this provision was insufficient to repeal § 2241 jurisdiction because "[n]either the title nor the text makes any mention of 28 U.S.C. § 2241." *Id.* at 308–09, 121 S.Ct. 2271. Similarly, the Court held that, because "[n]either [relevant provision of IIRIRA] explicitly mentions habeas, or 28 U.S.C. § 2241 . . . neither provision speaks with sufficient clarity to bar jurisdiction pursuant to the general habeas statute." 533 U.S. at 312, 121 S.Ct. 2271 (footnotes omitted).

■ Accordingly, the Supreme Court's decision in *St. Cyr* makes clear that a statute must, at a minimum, explicitly mention either "habeas corpus" or "28 U.S.C. § 2241" in order to limit or restrict § 2241 jurisdiction. Because FARRA does not expressly mention either "habeas corpus" or "28 U.S.C. § 2241," it does not meet the requirements set forth in *St. Cyr*, 533 U.S. at 299, 308–09, 312, 121 S.Ct. 2271, for the elimination of § 2241 jurisdiction. *See Cornejo–Barreto v. Seifert*, 218 F.3d 1004, 1016 n. 13 (9th Cir.2000) (holding that "[t]he FARR Act of 1998 did not limit habeas corpus review" because "[a]ny limitation of federal habeas corpus must be by express command" and FARRA makes "no mention of habeas corpus review" (internal citations and quotation marks omit-

ted)). The District Court was therefore correct to hold that it had jurisdiction to consider Wang's CAT claims.[16]

In reaching this conclusion, we are able to avoid serious constitutional concerns that would be raised if FARRA prohibited petitioners from bringing CAT claims in § 2241 petitions. FARRA § 2242(d) only permits review of claims for CAT relief "as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. [§ ]1252)." INA § 242 permits aliens who have been ordered removed by the immigration court to petition federal Courts of Appeals for review of their removal orders. *See generally* 8 U.S.C. § 1252. But such review is prohibited for certain classes of criminal aliens, including those who have been convicted of an aggravated felony. *See* 8 U.S.C. § 1252(a)(2)(C). Accordingly, absent habeas review, aggravated felons like Wang have no opportunity to seek review in federal court of INS decisions denying them CAT relief.

In *Calcano–Martinez v. INS*, 232 F.3d 328, 342–3 (2d Cir.2000), *aff'd*, 533 U.S. 348, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001), we addressed whether, following the implementation of IIRIRA, federal courts maintained habeas jurisdiction over challenges brought by aggravated felons to executive removal orders. We held that

---

16. The Government argues that this case differs from *St. Cyr* because, while habeas review historically had been available for the general removal statutes at issue in *St. Cyr*, it has not historically been available for CAT claims: "Here, the issue is not whether Congress has repealed or stripped the district courts of habeas jurisdiction over Torture Convention Claims. The issue is whether it has affirmatively granted such jurisdiction in the first place." Govt. Br. at 34. But § 2241 review is available to all persons "in custody

in violation of the Constitution or laws or treaties of the United States." Once Congress created rights under CAT by enacting FARRA, § 2241 necessarily became a proper avenue of relief for individuals in custody in violation of FARRA and its implementing regulations. Accordingly, the issue in this case—as in *St. Cyr*—is whether a statute has explicitly excluded a particular claim from the jurisdictional grant of § 2241. And in deciding this issue, it makes no difference whether the type of claim allegedly being excluded from § 2241 is long-standing or newly-created.

[w]ithout habeas jurisdiction to review final orders, there is currently no judicial review at all of a removal order issued against a non-citizen who is ordered removable because he or she committed a certain crime. Because habeas jurisdiction is constitutionally required where the immigration laws have been interpreted to bar other forms of judicial review under § 242(a)(2)(C), our decision that habeas review remains for a criminal alien's legal challenge to his or her deportation order obviates the profound constitutional questions that would arise if we concluded that all judicial review had been eradicated [by IIR-IRA].

*Id.* The Supreme Court affirmed this decision, finding that "leaving aliens without a forum ... would raise serious constitutional questions." 533 U.S. at 351, 121 S.Ct. 2268. Similarly, in *St. Cyr*, the Supreme Court noted that "[a] construction of [AEDPA and IIRIRA] that would entirely preclude review of a pure question of law by any court would give rise to substantial constitutional questions." 533 U.S. at 300, 121 S.Ct. 2271.

Because, under the test set forth by the Supreme Court in *St. Cyr*, FARRA does not speak with sufficient clarity to exclude CAT claims from § 2241 jurisdiction, we are able to avoid the serious constitutional concerns that would have arisen if FARRA had explicitly excluded CAT claims from § 2241.[17]

■ In sum, federal courts have jurisdiction under § 2241 to consider claims arising under CAT, as implemented by FARRA and the regulations promulgated thereunder.[18]

### B. Scope of Habeas Review

■ Even if we have habeas jurisdiction over CAT claims generally, the Government argues that Wang's claims do not fall within the scope of our review. In particular, it asserts that AEDPA and IIRIRA have limited the scope of habeas review of removal orders to purely legal questions of statutory interpretation. Accordingly, it maintains that we may not consider Wang's CAT claim because it "essentially challenge[s] the factual determinations made by the BIA and Immigration Judge." Gov't Br. at 38. We disagree.

Wang does not merely contest the immigration court's factual determinations—he challenges its application of the facts to FARRA and the regulations adopted pursuant to FARRA. In *St. Cyr*, the Supreme Court recognized that the Suspension Clause requires habeas review of

---

**17.** The Supreme Court has repeatedly held that an Act of Congress ought not to be construed to violate the constitution if any other construction is possible. *See, e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. and Const. Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."). Based upon this canon of statutory construction, even if *St. Cyr* were not determinative of the jurisdictional question raised here, we would be inclined to hold that FARRA did not repeal § 2241 jurisdiction over CAT claims, at least with respect to those aliens who are not otherwise entitled to judicial review.

**18.** We need not consider whether returning Wang to China impinges upon any norms of customary international law because, in the instant case, the issue is governed by the treaties and legislative and regulatory enactments of the United States. *See The Paquete Habana*, 175 U.S. 677, 700, 20 S.Ct. 290, 44 L.Ed. 320 (1900) (stating the proposition that customary international law is part of the law of the United States to the extent that *"where there is no treaty, and no controlling executive or legislative act or judicial decision,* resort must be had to the customs and usages of civilized nations"* (emphasis added)).

claims based upon the erroneous application of statutes.[19] The Court explained that "at the absolute minimum, the Suspension Clause protects the writ as it existed in 1789," 533 U.S. at 301, 121 S.Ct. 2271 (internal citation and quotation marks omitted), and at that time the use of the writ "encompassed detentions based on errors of law, *including the erroneous application or interpretation of statutes*," *id.* at 302 (emphasis added).

In *Henderson v. INS,* 157 F.3d 106, 119 (2d Cir.1998), we concluded that IIRIRA and AEDPA were "intended to make [ ] administrative decisions [regarding removal] nonreviewable to the fullest extent possible under the Constitution." *Id.* at 119 (internal citation and quotation marks omitted). But, because the Constitution requires habeas review to extend to claims of erroneous *application* or interpretation of statutes, *St. Cyr,* 533 U.S. at 302, 121 S.Ct. 2271, neither AEDPA nor IIRIRA could have excluded such claims from the scope of habeas review. Accordingly, Wang's argument on appeal challenging the BIA's application of the particular facts in this case to the relevant law falls within the permissible scope of habeas review.

### C. *Merits of Wang's CAT claim*

The BIA expressly stated that it did "not affirm the Immigration Judge's decision on the basis of an adverse credibility finding." BIA Decision at 2. Instead, it denied Wang's CAT claim because "there is no evidence in the record that China tortures deserters from its military." *Id.* at 6. This determination is not simply a factual finding—it is based upon an application of the facts to the legal standard set

forth in 8 C.F.R. § 208.16. *See* section I(A), *ante.*

■ Since the enactment of AEDPA and IIRIRA, we have not had occasion to articulate a standard for reviewing, in a § 2241 habeas setting, an application of facts to law by the BIA. The District Court applied a deferential, "substantial evidence" standard of review. *Wang,* 2001 U.S. Dist. LEXIS 21245, at *14. However, in addressing a *direct* petition for review of a decision of the BIA "[w]hen the situation presented is the BIA's application of legal principles to undisputed facts, rather than its underlying determination of those facts or its interpretation of its governing statutes, our review of the BIA's asylum and withholding of deportation determinations is *de novo.*" *Diallo v. INS,* 232 F.3d 279, 287 (2d Cir.2000) (internal quotation marks omitted).

■ Although the standard of review of a BIA's decision in a habeas case is generally more limited than on direct review, *Heikkila v. Barber,* 345 U.S. 229, 236, 73 S.Ct. 603, 97 L.Ed. 972 (1953), in this case we need not decide the precise standard to adopt for reviewing a BIA's application of law to fact pursuant to a § 2241 petition: Even if our standard of review pursuant to § 2241 affords no more deference to the BIA than on direct review—in other words, even if our review here is *de novo*—we find no error in the BIA's analysis.

Under 8 C.F.R. § 208.16(c)(2), Wang bore the burden of proving that, as a result of his military desertion, he is more likely than not to be tortured if removed to China. The BIA held that Wang failed to meet this burden because, "[i]n this case, there is no evidence in the record that

---

19. The Suspension Clause of the Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2.

China tortures deserters from its military." BIA Decision at 6. We agree. Wang submitted no evidence that military deserters generally are tortured in China. Instead, Wang relies upon his own anecdotal testimony regarding the following allegations: (1) that he was beaten for his first desertion attempt, (2) that he was told he would be beaten to death if he deserted again, (3) that he was likely to be imprisoned if returned to China, and (4) that persons he knew had not fared well in Chinese prisons.

 But this testimony is not sufficient to establish that Wang is "more likely than not" to be tortured if returned to China.[20] Imprisonment of military deserters does not inherently constitute torture. And, while Wang's testimony as well as some of his "country conditions" documents (see Note 12, ante) indicate that some prisoners in China have been tortured, Wang has in no way established that someone in his particular alleged circumstances is *more likely than not* to be tortured if imprisoned in China.[21] Moreover, although the BIA was bound to consider any past torture inflicted upon Wang

by Chinese officials, 8 C.F.R. § 208.16(c)(3), Wang failed to establish that his alleged previous beating was anything more than a deviant practice carried out by one rogue military official. And there is no evidence in the record that Wang would be placed under the supervision of that same lieutenant if returned to China. For this same reason, Wang has failed to establish that his lieutenant's alleged threat that he would be beaten to death if he deserted again is more likely than not to be carried out upon his return. In sum, none of the evidence relied upon by Wang establishes that he is more likely than not to be tortured if returned to China, and, like the BIA and the District Court, "[w]ithout more specific evidence, we are not persuaded by [Wang]'s arguments." BIA Decision at 6; see also Wang, 2001 U.S. Dist. LEXIS 21245, at *15–19.

Wang argued before the District Court that the BIA erred by holding that military discipline can never constitute "torture" under CAT. As the District Court properly determined, this argument radically misconstrued the holding of the BIA.

**20.** Significantly, Wang's burden of proof under CAT is greater than in a petition for asylum. To warrant asylum, an applicant need only establish that either (1) he has a well-founded fear of being persecuted on account of his race, religion, nationality, membership in a particular social group, or political opinion if returned to his country of origin, or (2) he suffered persecution in his country of origin *in the past* on account of race, religion, nationality, membership in a particular social group, or political opinion. *Guan Shan Liao v. U.S. Dep't of Justice*, 293 F.3d 61, 67 (2d Cir.2002). Upon making such a showing, an applicant is entitled to relief unless the Government can demonstrate by a preponderance of the evidence that "change in circumstances in the applicant's country of nationality has occurred such that the applicant's fear is no longer well-founded." *Id.* To be entitled to relief under CAT, however, Wang must establish

that there is greater than a fifty percent chance (i.e. that it is "more likely than not") that he will be tortured upon return to his or her country of origin. 8 C.F.R. § 208.16(c)(4). We need not—and do not—comment on whether Wang's testimony, if credited, is sufficient to meet the burden of proof for obtaining asylum.

**21.** It is true that "background evidence concerning general country conditions" may be used to "substantiate[] the applicant's particular claims." *Diallo v. INS*, 232 F.3d 279, 288 (2d Cir.2000). But, although some of the "country conditions" reports submitted by Wang indicate that the government of China has committed serious human rights violations, including the torture and mistreatment of some prisoners, these documents by no means establish that prisoners in Wang's circumstances—namely, military deserters and unlawful emigrants are "more likely than not" to be tortured.

*Id.* at *16. Because Wang does not advance this particular argument on appeal, however, we need not address it in depth.

On appeal, Wang asserts that the BIA erred because it imposed a heavier burden of proof on CAT applicants who claim to have been tortured in the context of military discipline. But in making this argument, Wang misconstrues the BIA's opinion. The BIA stated:

We do not question the respondent's evidence that there has been torture in China, nor do we question his characterizations of that torture. However, ... there is no evidence in the record that China tortures deserters from its military ... [and] we are hesitant to ascribe general conditions to the specific condition of a military deserter. Furthermore, we are hesitant to ascribe the respondent's characterization of torture to military discipline without more specific evidence.

*Id.* This language makes clear that the BIA did *not* impose a heavier burden in the context of military discipline. Instead, the BIA declined to extend Wang's evidence of torture by the government of China in other contexts to the specific context of military discipline, and it denied Wang CAT relief because he presented no evidence that the Chinese government tortures *military deserters* in particular. Accordingly, the BIA properly held that Wang failed to show that, if returned to China, he is more likely than not to be tortured as a result of his military desertion.

## IV. Due Process Claim

Wang argues that the Government has violated the Due Process Clause of the Fifth Amendment by holding him in detention since his release from state custody in 1999 without affording him a bond hearing before an Article III court. To remedy this asserted violation of the Due Process Clause, Wang requests that we enter an order directing the District Court to grant him a bond hearing as soon as possible.

The District Court treated Wang's claim as one of procedural due process and, therefore, analyzed it under the test for procedural due process challenges set forth by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). On appeal, Wang does not challenge the District Court's application of the balancing test set forth in *Mathews.* Instead, Wang argues that the District Court erred because it "did not address the Supreme Court's decisions concerning the Fifth Amendment's *substantive* due process component as it affects ... aliens." Br. for Appellant at 30 (emphasis added). Accordingly, we will analyze Wang's claim as one of substantive, rather than procedural, due process.

INA § 241, 8 U.S.C. § 1231, governs the detention of aliens subject to final orders of removal. It provides that, in general, "the Attorney General shall remove the alien from the United States within a period of 90 days" of the final removal order, INA § 241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A), and that "[d]uring the removal period, the Attorney General shall detain the alien," INA § 241(a)(2), 8 U.S.C. § 1231(a)(2). It further provides that certain classes of aliens, including inadmissible aliens and criminal aliens, shall continue to be subject to "supervision" even after the 90 day period expires if they have not yet been removed. INA § 241(a)(3),(6), 8 U.S.C. § 1231(a)(3),(6). The INS has interpreted the term "supervision" to include detention, and has maintained in the past that INA § 241 "sets no 'limit on the length of time beyond the removal period that an alien who falls within one of the Section 1231(a)(6) catego-

ries may be detained.'" *Zadvydas v. Davis*, 533 U.S. 678, 689, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (quoting Brief for Petitioners in *Zadvydas*, p. 22).

In *Zadvydas*, the Supreme Court was faced with the challenge of reconciling INA § 241's apparent authorization of indefinite executive detention with the Due Process Clause of the Fifth Amendment.[22] *Id.* In order to save § 241 from unconstitutionality, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699, 121 S.Ct. 2491.[23] The Court stated that detention is presumptively reasonable for six months following a final removal order, and that, after the first six months, detention violates § 241 if (1) an alien demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing. *Id.* at 701, 121 S.Ct. 2491.[24]

■ Because the *Zadvydas* Court set forth this "reasonable foreseeability" test in order to prevent § 241 from violating the Due Process Clause, we may safely assume that this test articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights. Under *Zadvydas*, then, detention of an alien "once removal is no longer reasonably foreseeable" not only violates § 241, it also violates the Due Process Clause.

■ Wang asks us to hold that his continued detention without a bail hearing violates his substantive due process rights. But, pursuant to *Zadvydas*, Wang's due process rights are not jeopardized by his continued detention as long as his removal remains reasonably foreseeable. Because we have declined above to grant Wang's habeas petition based upon his CAT claim, Wang's removal is not merely reasonably foreseeable, it is imminent. Accordingly, Wang's continued detention does not violate his right to due process of law.

Finally, Wang argues that the District Court erred by analyzing his claim pursuant to § 241. *See Wang*, 2001 U.S. Dist. LEXIS 21245, at *21 n. 8. Instead, he contends that he is being detained pursuant to INA § 236, 8 U.S.C. § 1226, which governs the detention of aliens against whom the Government has initiated removal proceedings, but whose removal periods have not yet commenced.[25] Wang

---

22. The defendants in *Zadvydas* were subject to final orders of removal, but the Government was unable or unlikely to be able to secure their acceptance by another nation and, accordingly, their removal was not reasonably foreseeable.

23. The Court made clear, however, that this due process restriction on detention does not apply if "the detention is ordered in a *criminal* proceeding with adequate procedural protections." 533 U.S. at 690, 121 S.Ct. 2491 (emphasis in original).

24. In setting forth this standard, the Court expressly relied on the fact that "the statute before us applies not only to terrorists and

criminals, but also to ordinary visa violators." *Id.* at 697, 121 S.Ct. 2491.

25. INA § 236(c) requires the Attorney General to take into custody certain classes of criminal aliens, including aggravated felons, and prohibits their release unless the Attorney General determines

> that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satis-

then cites two cases from other Circuits holding that mandatory detention under INA § 236 violates substantive due process—*Kim v. Ziglar,* 276 F.3d 523 (9th Cir.2001) *cert. granted sub nom. DeMore v. Kim,* —— U.S. ——, 122 S.Ct. 2696, 153 L.Ed.2d 833 (2002)(holding that mandatory detention under INA § 236 violates the Due Process Clause *as applied to aliens who are lawful permanent residents* ), and *Patel v. Zemski,* 275 F.3d 299 (3d Cir.2001) (substantially the same).

The determination of when an alien becomes subject to detention under INA § 241 rather than INA § 236 is governed by INA § 241(a)(1). Pursuant to § 241(a)(1)(B)(ii), "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien [pending review]," then the removal period begins on "the date of the court's final order." Accordingly, where a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under § 236 until the court renders its decision.

■ Although Wang's administrative removal order has not been formally stayed,[27] Wang broadly interprets § 241(a)(1)(B)(ii) to mean that "where an alien has an administratively [final] removal order but is pursuing habeas review, his detention is pursuant to INA § 236(c)." Br. for Appellant at 28. But even if we accept this assertion—which we do not— Wang's due process claim necessarily fails because his removal period commences at

the moment we file this decision, which disposes of his CAT claim and authorizes the mandate to issue to the District Court. *See* INA § 241(a)(1)(B)(ii), 8 U.S.C. § 1231(a)(1)(B)(ii) (stating that, where a removal order is subject to judicial review, the removal period commences on "the date of the court's final order"). Accordingly, there can be no doubt that Wang is *now* subject to detention under § 241 and, as discussed above, his continued detention under § 241 does not violate the Due Process Clause. To the extent that Wang previously may have had a cognizable due process argument under § 236, that claim has been rendered moot. *See Al Najjar v. Ashcroft,* 273 F.3d 1330, 1338 (11th Cir. 2001) (holding a challenge to pre-final order detention moot once the final order has been entered); *United States ex rel. Spinella v. Savoretti,* 201 F.2d 364 (5th Cir.1953) (same).

In sum, because Wang's continued detention under INA § 241 without a bond hearing does not violate the Due Process Clause, Wang is not entitled to relief.

## V. CONCLUSION

We hold that (1) federal courts have jurisdiction to consider CAT claims raised in § 2241 petitions, (2) Wang's claim falls within the scope of our habeas review, which includes all claims pertaining to the erroneous application or interpretation of statutes, (3) Wang is not entitled to CAT relief in the circumstances presented because he failed to establish that he is "more likely than not" to be tortured if returned to China, and (4) Wang's continued detention without an opportunity for bail is not in violation of his constitutional right to due process of law.

---

fies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. 8 U.S.C. § 1226(c)(2). Accordingly, for most aliens convicted of crimes, detention prior to the removal period is mandatory under § 236.

**27.** The District Court never issued a stay of the removal order because the Government agreed not to recommence the removal process until the habeas petition was resolved. On July 17, 2002, however, a panel of this Court issued an order staying the District Court's decision, but not explicitly staying the administrative removal order.

Accordingly, we affirm the judgment of the District Court.