23-6190-ag
*Meza v. Garland*

BIA
Burnham, IJ
A208 882 896

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of January, two thousand twenty-five.

PRESENT:
> JOSÉ A. CABRANES,
> ROBERT D. SACK,
> SARAH A. L. MERRIAM,
> > *Circuit Judges.*

_____

VIVIAN AZUCENA MEZA,
> *Petitioner,*

> v.                                                      **23-6190-ag**

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
> *Respondent.*

_____

**FOR PETITIONER:**  Cassandra Estassi, Emily Kase, Central American Legal Assistance, Brooklyn, NY.

**FOR RESPONDENT:**  Brian M. Boynton, Principal Deputy Assistant Attorney General; Anthony P. Nicastro, Assistant Director; Peter M. Gannon, Trial Attorney; Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Vivian Azucena Meza, a native and citizen of Honduras, seeks review of a February 3, 2023, decision of the BIA affirming a June 18, 2019, decision of an Immigration Judge ("IJ") denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Vivian Azucena Meza*, No. A 208 882 896 (B.I.A. Feb. 3, 2023), *aff'g* No. A 208 882 896 (Immig. Ct. N.Y. City June 18, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

"We review the agency's factual findings to determine whether they are supported by substantial evidence and its conclusions of law *de novo*. Because the BIA adopted and supplemented the decision of the IJ, we have reviewed the

2

decision of the IJ as supplemented by the BIA." *Niang v. Holder*, 762 F.3d 251, 253 (2d Cir. 2014) (citations omitted). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

An asylum applicant must show past persecution or a well-founded fear of future persecution on account of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1158(b)(1)(B)(i); *see* 8 C.F.R. § 1208.13(b). Where, as here, the agency concludes that an applicant suffered past persecution, the applicant has a presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). The Government may rebut that presumption by "establishing by a preponderance of the evidence" that "[t]he applicant could avoid future persecution by relocating to another part of [her] country of nationality." *Id.* § 1208.13(b)(1)(ii), (i)(B);[1] *see Surinder Singh v. BIA*, 435 F.3d 216, 219 (2d Cir. 2006) ("Asylum in the United States is not available to obviate re-location to sanctuary in one's own country."). The same relocation principles apply to withholding of removal. *See id.* § 1208.16(b)(1)(i)(B), (ii), and (b)(3).

Substantial evidence supports the agency's determination that Meza could

[1] We apply the regulations that were in effect in March 2017 when Meza filed her application.

3

safely relocate to avoid hitmen who killed her uncle for political reasons and who had targeted her because she joined her uncle in filing a police report. *See Jagdeep Singh v. Garland*, 11 F.4th 106, 115 (2d Cir. 2021) (reviewing relocation finding for substantial evidence). We uphold factual determinations subject to the substantial evidence standard "unless any reasonable adjudicator would be *compelled* to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphasis added). The agency reasonably relied on the fact that Meza had lived safely in San Pedro Sula, Honduras, for several months and that her family remained in Honduras unharmed. Meza's argument that there is a nationwide threat because the hitmen worked for an opposing political party does not change the analysis because the record does not reflect that the hitmen were government actors or that the Honduran government was unable or unwilling to control them. *See Singh*, 11 F.4th at 115–16.

The agency reasonably relied on the fact that Meza had lived safely in San Pedro Sula, Honduras, for several months. The record reflects that Meza remained unharmed in Honduras after 2013, apart from one incident that occurred when she was visiting her hometown of Olanchito in 2016. In both 2013 and 2016, men on motorcycles approached her, threatened her, and tried to force her into a vehicle.

4

She argues that she would "see motorcycles going around [her] house" in San Pedro Sula when she lived there in either 2014 or 2015. Certified Administrative Record ("CAR") at 121. But when asked directly whether she was ever personally threatened again, Meza testified only to the 2016 incident in Olanchito. *See* CAR at 121-23. When she was asked whether "all of these attacks on your, your family members and threats to you" had occurred in her hometown of Olanchito, she testified that she had also been threatened once in La Ceiba, but confirmed that she had never had "any problems from the gangs" in San Pedro Sula. CAR at 132, 133. Thus, Meza's testimony about her time in San Pedro Sula, and the absence of threats or harm outside of her hometown after 2013, support the IJ's conclusion that she could safely relocate within Honduras. *See Siewe v. Gonzales*, 480 F.3d 160, 167–68 (2d Cir. 2007) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (citation and quotation marks omitted)). The record thus does not compel a conclusion contrary to the agency's determination that Meza could safely relocate within Honduras. *See* 8 U.S.C. § 1252(b)(4)(B).

Second, the fact that Meza's family members have remained in Honduras unharmed and unthreatened adds further support to the relocation finding. Meza

5

testified that she was targeted because she was with her uncle when he filed a police report against the hitmen, but also testified that her mother (her uncle's sister) accompanied them. When asked if her mother, her aunt, or her sister had been threatened or harmed by the hitmen, she said she did not know. Contrary to her assertion that her family could have been targeted without her knowledge, neither Meza's mother, who remains in Olanchito, nor Meza's sister, who has relocated within Honduras to Tegulcigalpa, reported in their statements being threatened or harmed. Because claims of a well-founded fear of persecution are diminished where similarly situated relatives remained in the country without harm, the agency did not err in considering the safety of her family, particularly because her mother accompanied her to make the police report and one of her proposed protected grounds was based on family membership. *See Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir. 1999).

Meza now argues that her family was not similarly situated to her, and that the agency ignored evidence that her partner's son was killed in 2018, purportedly by the same hitmen. These arguments cut against each other. If Meza was not similarly situated to her family because they were not present during the attack and filing of the police report (though her mother was), then her partner's son is

6

also not similarly situated, meaning there is no reason to assume a connection between his 2018 murder and the threats against Meza in 2013 and 2016. Moreover, the BIA expressly considered her partner's son's murder but determined it was not relevant because he was not legally recognized as a family member, and there was no evidence that his murderers viewed him as related to Meza. Nothing Meza now argues *compels* the conclusion that the agency's findings were error. *See* 8 U.S.C. § 1252(b)(4)(B).

Meza further contends that the BIA failed to consider her "overall risk of persecution" at the hands of the Freedom Party throughout Honduras. Pet. Br. at 16. However, "an applicant . . . cannot simply point to general country-conditions evidence without showing how that evidence *compels* the conclusion that a person in the applicant's particular circumstances would be unable to relocate to avoid persecution." *Singh*, 11 F.4th at 116 (citation and quotation marks omitted) (emphasis added). Nothing in the evidence Meza points to compels the conclusion that she would be harmed if she relocated to San Pedro Sula, especially in light of the fact that she lived there safely during a time when the Freedom Party were purportedly seeking her. *See Quintanilla-Mejia v. Garland*, 3 F.4th 569, 593–94 (2d Cir. 2021) ("[S]ubstantial evidence review does not contemplate any judicial

reweighing of evidence. Rather it requires [this Court] to ask only whether record evidence compelled [a] . . . finding different from that reached by the agency.").

Moreover, she cannot simply claim "overall risk" based on an opposition political party's power. "An applicant's allegation that [s]he was persecuted by members of a political party – even one that is in power nationally . . . – does not establish that the applicant was persecuted by the government. Members of a political party are not the government; for mistreatment inflicted by party members to amount to persecution, an applicant must show that the government was unwilling or unable to control the attackers." *Singh*, 11 F.4th at 115 (citations omitted). The record does not reflect that the Honduran government was unable or unwilling to control the attackers, even if they were members of a national political party, especially given that Meza and her uncle submitted a police report and Meza left her hometown after filing the report and did not know what steps the police took.

On this record, the agency did not err in concluding that the Government met its burden of rebutting the presumption of a well-founded fear of future persecution because Meza could safely relocate to San Pedro Sula. *See Jian Xing Huang v. U.S. Immigr. & Naturalization Serv.*, 421 F.3d 125, 129 (2d Cir. 2005) ("In

8

the absence of solid support in the record . . . [an applicant's] fear is speculative at best."). The internal relocation finding is dispositive of asylum and withholding. *See* 8 C.F.R. §§ 1208.13(b)(1)(i)(B), (ii); 1208.16(b)(1)(i)(B), (ii), and (b)(3).

Finally, we agree that Meza's CAT claim fails because she did not show government acquiescence to her torture. An applicant for CAT relief bears the burden to establish that she would "more likely than not" be tortured by or with the consent or acquiescence of a government official. 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). To show that torture is "more likely than not," an applicant "must establish that there is greater than a fifty percent chance . . . that [s]he will be tortured upon return to . . . her country of origin." *Mu-Xing Wang v. Ashcroft*, 320 F.3d 130, 144 n.20 (2d Cir. 2003). To establish acquiescence to torture, the applicant must show that "the public official, prior to the activity constituting torture, [will] have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity."[2] 8 C.F.R. § 1208.18(a)(7). The agency considers "all evidence relevant to the possibility of future torture," including past torture, the applicant's ability to relocate to a part of the country

---

[2] We would reach the same conclusion in this case whether considering the current version of CAT regulations or the version in effect at the time of the IJ's decision. *See Garcia-Aranda v. Garland*, 53 F.4th 752, 758 n.5 (2d Cir. 2022).

where she is not likely to be tortured, and "gross, flagrant or mass violations of human rights within the country of removal." *Id.* § 1208.16(c)(3).

Meza testified that she had never had problems with the Honduran government, police, or military. The BIA emphasized that Meza and her uncle filed a police complaint after being shot at, and while the police were "not successful" in either their investigation or preventing her uncle's subsequent murder, "there is no evidence that a public official or police officer ever assisted these hitmen" and her country conditions evidence, while showing a culture of corruption, did not contain "particularized evidence that any public official would acquiesce or willfully turn a blind eye to her torture by these hitmen." CAR at 6. The BIA rejected Meza's argument that the government's inability to protect her uncle meant that it would necessarily acquiesce to her torture, citing country conditions evidence that the Honduran government was prosecuting corruption.

Meza argues that the BIA used the wrong standard, referencing the BIA's determination that no public official had assisted the hitmen, and she contends that she was not required to provide "particularized evidence" of a threat of torture beyond the country conditions evidence. *See* Pet. Br. at 29-30. Her arguments are misplaced. Evidence of a "particularized" threat of torture is

required for CAT claims. *Mu Xiang Lin v. U.S. Dep't of Just.*, 432 F.3d 156, 160 (2d Cir. 2005). And although the BIA used the word "assisted," its analysis is tethered to the acquiescence standard, which it directly cited in the preceding paragraph. CAR at 6. Given the absence of evidence that government actors were seeking to torture her, the evidence of some police response to her uncle's report, and the government's attempts to combat corruption, the record does not compel a conclusion that that Honduran officials would acquiesce to Meza's torture. *See Quintanilla-Mejia*, 3 F.4th at 593–94.

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

11