**Mu Xiang LIN, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Attorney General Alberto R. Gonzales,\* Respondent.**

**Docket No. 03–41067–AG(NAC).**

United States Court of Appeals, Second Circuit.

Submitted to NAC: Nov. 7, 2005.

Decided: Nov. 22, 2005.

Amended: Dec. 6, 2005.

---

**2.** Whelton also argues that ECMC's challenge to the discharge was untimely. He notes that the Bankruptcy Code permits revocation of a confirmation order only if the request is made within 180 days of entry of the order, whereas the present action was filed more than two years after confirmation. This action is not, however, an action to revoke a confirmation order, but rather to declare one of the provisions of a confirmed plan void *ab initio.* Accordingly, ECMC was bound only by the "reasonable time" limitations of Rule 60(b)(4), which have been interpreted permissively. *See Beller & Keller v. Tyler,* 120 F.3d 21, 24 (2d Cir.1997) ("[I]t has been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void may be made at any time.")(internal quotations omitted).

\* U.S. Attorney General Alberto R. Gonzales is substituted as Respondent. *See* Fed. R.App. P. 43(c)(2).

Bruno Joseph Bembi, Hempstead, NY, for Petitioner.

Christopher Alberto, Assistant United States Attorney (Michael J. Sullivan, United States Attorney for the District of Massachusetts, on the brief), United States Attorney's Office for the District of Massachusetts, Boston, MA, for Respondent.

Before: CABRANES, WESLEY, and HALL, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

We consider here whether the BIA's determination that petitioner failed to establish that she would "more likely than not" be tortured upon her return to China is supported by substantial evidence. Given the serious nature of the petitioner's fears—that she will be tortured upon her return to China—we give careful consideration to the BIA's conclusions, reviewing them in light of the law governing claims under the United Nations Convention Against Torture ("CAT").[1]

Upon our review of the record, we hold that letters from petitioner's family members requesting that she not be deported, coupled with excerpts drawn together from different parts of two State Department reports which establish that (1) many repatriated Chinese citizens have been

---

1. United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Dec. A/39/51 (1984); 23 I.L.M. 1027 (1984).

placed in administrative detention, (2) conditions in administrative detention facilities are "similar to those in prisons," and (3) there have been several documented instances of Chinese prisoners having been tortured, do not compel a reasonable adjudicator to conclude that petitioner would more likely than not be subjected to torture if removed to China. Because petitioner presents no particularized evidence suggesting that she is likely to be subjected to torture in Chinese prisons, we hold that she cannot make out a successful claim under the United Nations Convention Against Torture. Accordingly, we deny the petition for review.

Mu Xiang Lin ("Lin"), a native and citizen of the People's Republic of China ("China"), fled China in search of a more lucrative job in the field of medicine, and entered the United States on or about June 20, 2000. Lin admitted that she had entered the United States without possessing a valid passport, conceded her removability under Section 212(a)(7) of the Immigration and Nationality Act of 1952 ("INA"), withdrew her prior requests for asylum and withholding of removal under sections 208 and 241(b)(3) of the INA respectively, and requested that she be afforded protection under Article 3 of the CAT.

Lin now petitions for review of a November 19, 2003 decision of the BIA reversing a May 20, 2002 oral decision of an immigration judge ("IJ") that had granted Lin relief under Article 3 of the CAT based on a finding that Lin would more likely than not be subjected to torture if she were removed to China.

In support of her application for withholding of removal under the CAT, Lin relied principally on State Department reports on human rights conditions in China,[2] excerpts of which, when read together, established that (1) in the past, many repatriated Chinese citizens have been punished with administrative detention; (2) conditions in administrative detention facilities are "similar to those in prisons"; and (3) there are several documented instances of Chinese prisoners having been tortured, such as through the use of "electric shocks, prolonged period of solitary confinement, incommunicado detention, beatings, shackles, and other forms of abuse."

Lin also presented to the IJ a letter from her brother, who claimed to have been imprisoned and beaten by Chinese officials after being repatriated to China from the United States, as well as a letter from her parents describing the difficulties that her family had experienced in dealing with corrupt Chinese government officials and asserting, without elaboration, that petitioner would be "imprisoned for three to five years" if she were to return to her native country. Finally, petitioner offered into evidence provisions of the Chinese criminal code and newspaper articles concerning secret border crossings and human smuggling, both of which are routinely punished by the Chinese government. While the BIA did not dispute the credibility of Lin's testimony concerning the circumstances of her departure from China and her fears of returning there, it nonetheless determined that "the evidence of record does not support th[e] finding" that petitioner, "based solely on the fact that she illegally left China, will more likely than not be subjected to torture if she returns to her country." The BIA observed that Lin had established "nothing specifically about the treatment of repatriated citizens," and noted that the 2001

---

**2.** Specifically, petitioner relied on an April 14, 1998 report entitled "China: Profile of Asylum Claims and Country Conditions" and the 2001 "Country Report[] on Human Rights Practices" for China (including Hong Kong and Macau).

State Department report's reference to the "torture and degrading treatment" of "some detainees and prisoners" does not establish that such practices are more likely than not to be used against Lin, even in the event that she is imprisoned upon her return. Moreover, the BIA expressly took into account the letter from petitioner's brother, concluding that "[a]lthough the letter ... notes that, after [her brother] was repatriated to China, he was imprisoned and 'often beaten during the daily work for not pay[ing] attention,' [petitioner] submitted no evidence that repatriated citizens generally are tortured in China."

■ Article 3 of the CAT prevents state parties from removing an alien to a country where he more likely than not would be tortured by, or with the acquiescence of, government officials acting in an official capacity. *See Mu–Xing Wang v. Ashcroft,* 320 F.3d 130, 133–34 (2d Cir. 2003). To establish eligibility for protection under the CAT, an applicant bears the burden of proving that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *see Ramsameachire v. Ashcroft,* 357 F.3d 169, 184 (2d Cir.2004). In the context of CAT claims, torture is defined as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1). According to the U.S. regulations that govern CAT claims, "[t]orture is an extreme form of cruel and inhuman treatment," 8 C.F.R. § 1208.18(a)(2), and "[i]n order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering," 8 C.F.R. § 1208.18(a)(5). Moreover, "[t]orture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions [such as] judicially imposed sanctions and other enforcement actions authorized by law." 8 C.F.R. § 1208.18(a)(3).

■ When the BIA issues its own independent decision and does not adopt the IJ's decision, this Court reviews the decision of the BIA alone. *See Yan Chen v. Gonzales,* 417 F.3d 268, 271 (2d Cir. 2005). Congress has specified that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Accordingly, we review the BIA's decision under a standard of "substantial evidence." *See Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 (2d Cir.2004). The scope of this Court's review under the substantial evidence standard is " 'exceedingly narrow,' " *Melgar de Torres v. Reno,* 191 F.3d 307, 313 (2d Cir.1999) (quoting *Carranza–Hernandez v. INS,* 12 F.3d 4, 7 (2d Cir.1993)), and we will uphold the BIA's decision "unless [the petitioner] demonstrates that the record evidence was 'so compelling that no reasonable factfinder could fail to find' him eligible for ... relief under the Convention Against Torture," *Habtemicael v. Ashcroft,* 370 F.3d 774, 779 (8th Cir.2004).

■ Upon our review of the record, we hold that the BIA's determination—that petitioner failed to establish that she would more likely than not be tortured upon her return to China—is supported by

substantial evidence. In large measure, the BIA based its conclusion on the fact that neither of the State Department reports relied upon by petitioner contain any evidence suggesting that the specific sub-population of repatriated citizens are generally tortured in Chinese prisons. Rather, petitioner asked the BIA (and now asks this Court) to infer, on the basis of generalized language culled from different portions of two State Department reports, that (1) Lin will more likely than not be detained upon her return to China rather than fined or otherwise punished without detention; (2) administrative detainees face the same risk of torture as political dissidents and other prisoners reported to have been tortured; and (3) instances of torture in Chinese prisons are sufficiently routine as to render it *more likely than not* that any given detainee will be tortured.

In *Mu–Xing Wang v. Ashcroft,* 320 F.3d 130, 143–44 (2d Cir.2003), we rejected a similar claim for CAT relief on the basis that "while Wang's testimony as well as some of his 'country conditions' documents ... indicate that *some* prisoners in China have been tortured, Wang has *in no way established that someone in his particular alleged circumstances is more likely than not to be tortured if imprisoned in China.*" (emphasis added). There, we specifically noted that "although some of the 'country conditions' reports submitted by Wang indicate that the government of China has committed serious human rights violations, including the torture and mistreatment of some prisoners, these documents by no means establish that prisoners in Wang's circumstances—namely, military deserters and unlawful emigrants—are 'more likely than not' to be tortured." *Id.* at 144 n. 21. Because petitioner in the instant case relies on the same country reports that we rejected as a sufficient basis for granting CAT relief in *Mu–Xing Wang,* and be-

cause she offers no additional particularized evidence to support her claim, we decline to grant relief in the circumstances presented.

■ Petitioner seeks to distinguish this case by pointing to letters that her family members submitted to immigration authorities in the United States requesting that she not be returned to China. Even taking at face value the hearsay allegations that Lin's brother made concerning his own experience of having been beaten in prison, his letter does not indicate that the same fate will befall his sister upon her return. Rather, the brother's letter cautions only that his sister may be imprisoned, notes that "[t]he current policy is more restrictive [because it requires] three years in prison," and expresses concern that "she could not withstand the shock" of imprisonment. While we concede that there is a risk that any individual detainee in China may be subjected to repressive conditions in prison, we cannot conclude on this record that petitioner has carried her burden of demonstrating that she is "more likely than not" to be tortured if she is repatriated to China. As we noted in *Mu–Xing Wang,* imprisonment alone "does not inherently constitute torture" within the meaning of the CAT. *Mu–Xing Wang,* 320 F.3d at 144.

Without more particularized evidence, Lin asks this Court to hold that she is entitled to CAT protection based *solely* on the fact that she is part of the large class of persons who have illegally departed China. Were such a showing sufficient to secure relief under the CAT, any asylum-seeker arriving in the United States illegally from China would equally be entitled to such relief. Neither the CAT, nor the domestic regulations implementing that Convention, anticipate or require such a result.

Because we hold that a reasonable fact-finder would not be compelled to conclude that Lin will more likely than not be subjected to torture if she is removed to China, we deny the petition for review.

CONCLUSION

In sum, we hold that a reasonable adjudicator would not be compelled to conclude that petitioner, if repatriated, would more likely than not be subjected to torture based on (a) letters from petitioner's family members that she would face a risk of imprisonment and mistreatment in prison, (b) materials describing the criminal consequences of illegal departure from China; and (c) excerpts from State Department reports which establish that many repatriated Chinese citizens have been placed in administrative detention, that conditions in administrative detention facilities are "similar to those in prisons," and that there have been several documented instances of Chinese prisoners having been tortured.

\* \* \* \* \* \*

For the reasons stated above, we DENY the petition for review.

