FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

February 21, 2023

**Christopher M. Wolpert**
**Clerk of Court**

_____

VERONICA DEL CARMEN
MARROQUIN-BENITEZ; JULIO
ERNESTO SANTAMARIA-
MARROQUIN; JOHN DOE,

     Petitioners,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 22-9519
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **TYMKOVICH**, and **MATHESON**, Circuit Judges.
_____

Veronica Del Carmen Marroquin-Benitez ("Marroquin-Benitez") and her sons,

Julio Ernesto Santamaria-Marroquin ("Julio") and John Doe ("A.N.M."),[1] seek review of

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Marroquin-Benitez's youngest son is identified in the caption as "John Doe" because he is a minor.  We follow the convention in Petitioners' brief in referring to him as A.N.M.

a Board of Immigration Appeals' (BIA) decision dismissing their appeal from an Immigration Judge's (IJ) removal order. Exercising jurisdiction under 8 U.S.C. § 1252, we deny the petition.

## BACKGROUND

Marroquin-Benitez and her sons are natives and citizens of El Salvador. They allege that El Salvadoran gang members threatened Julio, stating that the gang would kill him and his family if he did not join the gang. "[A]fter they threatened [him], a car came by and [the gang members] thought it was a police patrol car and so they took off running." *Id.* at 132.

Julio, who was fifteen at the time, recounted the incident to his mother. Marroquin-Benitez was frightened and remained inside the house with her sons for a week or more. Several years earlier, gangs had murdered a teenage nephew for refusing to join a gang and another nephew for cooperating with police after joining the gang, and she "didn't want the same thing to happen to [her] children or to [herself]." *Id.* at 107. So, Marroquin-Benitez and her sons fled El Salvador.

On November 30, 2015, they entered the United States without inspection. The Department of Homeland Security took them into custody and charged them as noncitizens present in this country without admission or parole. They conceded

removability and sought asylum, withholding of removal, and protection under the Convention against Torture (CAT).[2]

Represented by counsel, they appeared before an IJ for an asylum hearing. Marroquin-Benitez testified that she "personally hadn't had any problems with the gang before this," *id.*, and that the gang's threat included her and A.N.M. to make it "very painful for" Julio if he did not join, *id.* at 123. She said that she did not report the incident to the police because she feared gang retaliation. Finally, she testified that her siblings and parents remain in El Salvador and have not been harmed since she fled.

Julio testified that the only reason the gang threatened his family was to "force [him] to join." *Id.* at 134. He feared the gang would threaten or harm him upon returning to El Salvador "[b]ecause [he] didn't obey them when they asked [him] to join," and "[t]hey wanted . . . [him] to be with them supporting them in all that they were doing." *Id.* at 137. But he did not want to join the gang because he did not want to "go around with them killing people or stealing," and he feared the "opposing gang" would "come after [him]." *Id.* at 133. Finally, Julio explained that he did not contact the police because he feared the gang would kill him.

The IJ denied relief and ordered Marroquin-Benitez and her sons removed to El Salvador. They appealed to the BIA, asserting, among other things, that they had shown persecution or a well-founded fear of future persecution due to (1) their

---

[2] Marroquin-Benitez designated her sons as derivative beneficiaries of her asylum application. Julio and A.N.M. "also filed their own asylum applications[,] which arise out of the same set of operative facts." R., Vol. I at 3 n.1.

membership in social groups comprising "Julio's Immediate Family Members" and "Salvadoran Males Resisting and Fleeing Gang Recruitment," and (2) "Julio's political opinion." *Id.* at 62-63. As for their CAT claims, they argued that "[c]ountry conditions and the family's personal experience make it clear that the government would acquiesce to their torture and that the gang will certainly torture and murder them if they are forced to return to El Salvador." *Id.* at 32.

The BIA dismissed their appeal, concluding, in regard to asylum, that Marroquin-Benitez and her sons "did not establish that they suffered past persecution or have a well-founded fear of persecution in El Salvador *on account of a protected ground*." *Id.* at 4 (emphasis added). The BIA explained that when threats of gang violence are centrally motivated by resistance to gang recruitment, there is an insufficient nexus between persecution and a protected ground. *See Orellana-Recinos v. Garland*, 993 F.3d 851, 855-56 (10th Cir. 2021) (observing that persecution qualifies as "on account of" if the asylum "applicant . . . possess[ed] a protected characteristic and that protected characteristic . . . motivated the persecutor to harm the applicant" (internal quotation marks omitted)). Next, the BIA noted that because Marroquin-Benitez and her sons failed to meet the requirements for asylum, they necessarily could not meet the higher standard for withholding of removal. Finally, the BIA stated that their CAT claims failed because they did not show they "are personally at risk of torture." R., Vol. I at 4. The BIA acknowledged that there are "widespread issues of gang violence and corruption in El Salvador" and that two "extended family members were killed by gang

members in 2010 and 2011," but that evidence alone did not indicate they will likely be tortured if removed to El Salvador. *Id.*

## DISCUSSION
## I.  Standards of Review

"Because a single member of the BIA affirmed the IJ's decision in a brief order, we review the BIA's opinion rather than the decision of the IJ." *Neri-Garcia v. Holder*, 696 F.3d 1003, 1008 (10th Cir. 2012) (citation omitted). But "resort to the IJ's decision is appropriate in situations where the BIA incorporates the IJ's rationale or a summary of its reasoning." *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006).

"When reviewing BIA decisions, an appellate court must look to the record for substantial evidence supporting the agency's decision:  Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Sarr v. Gonzales*, 474 F.3d 783, 788 (10th Cir. 2007) (brackets and internal quotation marks omitted).

## II.  Asylum

"To qualify for asylum, a noncitizen must demonstrate either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Addo v. Barr*, 982 F.3d 1263, 1269 (10th Cir. 2020) (internal quotation marks omitted). A protected ground must "be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). This court "interpret[s] 'one central reason' to mean [that] the protected ground cannot play a minor role in the alien's past mistreatment or fears of

future mistreatment and cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Rodas-Orellana v. Holder*, 780 F.3d 982, 996 (10th Cir. 2015) (internal quotation marks omitted). The persecutor's "motive [is] critical to" the asylum analysis. *Id.* (internal quotation marks omitted).

"In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335 (10th Cir. 2008) (internal quotation marks omitted). Thus, we may not reverse unless "any reasonable adjudicator would be compelled to conclude to the contrary" as to persecution. 8 U.S.C. § 1252(b)(4)(B).

### A.    Membership in a Particular Social Group[3]

### 1.    Julio's Immediate Family Members

Petitioners contend that the evidence in this case "make[s] it clear that the gang persecuted [Marroquin-Benitez and A.N.M.] because they are Julio's immediate family." Opening Br. at 18. They suggest that the gang's threat to harm Marroquin-Benitez and A.N.M stemmed from animus against the family unit, separate from the gang's criminal objectives.

But they ignore the testimonial evidence in this case. Both Julio and Marroquin-Benitez testified that the gang threatened her and A.N.M. in order to pressure Julio to join

---

[3] Like the BIA, we assume, without deciding, that Petitioners' proposed social groups are cognizable, and that the single threat uttered to Julio qualified as persecution. But we note, in regard to Petitioner's proposed social group of "Salvadoran Males Resisting and Fleeing Gang Recruitment," that this court has held that a similarly defined

6

the gang. Their membership in the social group of Julio's immediate family members "is relevant only as a means to an end—that is, [their] membership enables the persecutors to effectuate their objectives," *Orellana-Recinos*, 993 F.3d at 856, which, as the agency noted, are "to expand their criminal enterprise," R., Vol. I at 64.

Nevertheless, Petitioners argue that the gang had mixed motives—"one motivation . . . to maintain control of the Salvadoran population" and one motivation "specifically target[ing] . . . Julio's immediate family." Opening Br. at 12 (emphasis omitted). Although "a persecutor can have multiple motives for targeting someone," *Orellana-Recinos*, 993 F.3d at 855, there is no evidence in this case that the threat against Marroquin-Benitez and A.N.M. was uttered for any reason other than as a recruitment tool, let alone evidence to suggest that one central reason for the threat might have been a protected ground, *see id.* (stating that "even when the protected ground is intertwined with unprotected reasons, the protected ground must still be a central reason" (internal quotation marks omitted)).[4]

---

social group is not cognizable. *See Rodas-Orellana*, 780 F.3d at 991, 992 (holding that the group of "El Salvadoran males threatened and actively recruited by gangs, who resist joining because they oppose the gangs" is not a cognizable social group because its members "are . . . not in a substantially different situation from anyone who has crossed the gang[] or who is perceived to be a threat to the gang's interests" (internal quotation marks omitted)).

[4] Petitioners assert, without citation to the record, that "had Julio decided to join the gang, that would not have saved his family from the wrath of the gang." Opening Br. at 18. But even if true, record evidence indicates that the reason Marroquin-Benitez and A.N.M. might have remained in danger is because gangs threaten families of forcible recruits to ensure "compl[iance] with gang members' demands," R., Vol. III at 994, not because of "hostility toward the family unit," *Orellana-Recinos*, 993 F.3d at 858.

Because the record does not compel the conclusion that Marroquin-Benitez's and A.N.M.'s membership in "Julio's Immediate Family Members" was or will be one central reason for their persecution, we uphold the BIA's decision regarding this particular social group.

**2.      Salvadoran Males Resisting and Fleeing Gang Recruitment[5]**

Petitioners argue that the "evidence in this matter demonstrates that one central reason Julio will be persecuted in the future is his membership in the particular social group [of] Salvadoran males who resisted and fled gang recruitment." Opening Br. at 21. But Petitioners ignore Julio's own testimony that he feared the gang would threaten or harm him in the future because he refused to be recruited and they wanted his "support[] . . . in all that they were doing." R., Vol. I at 137. This testimony supports the agency's conclusion that the threat of future harm to Julio exists, if at all, because of his resistance to the gang's "desire to increase its power and the reach of [its] criminal enterprise," *id.* at 63. Indeed, Julio did not testify that he feared future harm from any other gangs, just the particular gang he refused to join. "[M]embership in a particular social group should not be considered a motive for persecution if the persecutors are simply pursuing their distinct objectives and a victim's membership in the group is relevant only as a means to an end." *Orellana-Recinos*, 993 F.3d at 856 (emphasis omitted).

---

[5] This proposed social group necessarily applies only to Julio's fear of future persecution, because at the time he was threatened, he had not yet resisted and fled gang recruitment.

Because the record does not compel the conclusion that Julio's membership in "Salvadoran Males Resisting and Fleeing Gang Recruitment" is one central reason for his fear of future persecution, we uphold the BIA's decision regarding this particular social group.

### B.    Political Opinion

Petitioners claim that "Julio's actions demonstrate an anti-gang political opinion" and the gang "imput[ed] his opinion to [Marroquin-Benitez and A.N.M.]," "putting them at risk." Opening Br. at 26. Preliminarily, we note Petitioners cite no part of the record indicating that Julio held any political opinions, or that if he did, he communicated them to the gang.

In any event, "[t]he Supreme Court has clarified that a group's attempt to coercively recruit an individual is not necessarily persecution on account of political opinion." *Rivera-Barrientos v. Holder*, 666 F.3d 641, 646 (10th Cir. 2012). Indeed, Julio testified that he did not want to join the gang because he did not want to be a murderer or a thief, and he feared harm from a rival gang. Those are not political grounds.

Moreover, "even if it were clear that [Julio] resisted on political grounds, he would need to make the additional showing that" the gang's threat to kill him and his family "was motivated by more than anger at h[is] unwillingness to join [the gang] and a desire to coerce h[im] into joining." *Id.* at 647. But as we previously indicated, the testimonial evidence in this case shows that the gang threatened Julio and his family in response to his refusal to join and to compel him to join.

9

Instead of identifying evidence that Julio held an anti-gang political opinion or that the gang issued its threat because of that opinion, Petitioners argue that Julio's resistance to recruitment is necessarily political because the gang that likely threatened him, MS-13, "operates politically as a *de facto* government in El Salvador." Opening Br. at 26. We do not consider this argument, however, because it was not exhausted in the BIA. *See Martinez-Perez v. Barr*, 947 F.3d 1273, 1282 (10th Cir. 2020) ("Ordinarily, a petitioner must exhaust all administrative processes available to hear his arguments before he may seek to bring those arguments to court." (internal quotation marks omitted)).[6]

Because the record does not compel the conclusion that Julio's political opinion was one central reason for the gang's threat against him and his family, we uphold the BIA's decision on this protected ground.

### III. Withholding of Removal

"To be eligible for withholding of removal, an applicant must demonstrate that there is a clear probability of persecution because of his race, religion, nationality, membership in a particular social group, or political opinion." *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012) (internal quotation marks omitted). Because Petitioners have not met the requirements for asylum, they cannot "satisfy the higher standard of eligibility for withholding of removal." *Id.* at 1234.

---

[6] We deny Petitioners' request for judicial notice of a document purportedly showing negotiations between El Salvador's current government and the country's gangs. *See* 8 U.S.C. § 1252(b)(4)(A) (limiting judicial review to "the administrative record on which the order of removal is based").

### IV. CAT Relief

"Article 3 of the [CAT] prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (brackets and internal quotation marks omitted). The BIA affirmed the denial of Petitioners' CAT claims because they failed to show a sufficient likelihood of torture upon returning to El Salvador. In so concluding, the BIA acknowledged the murders in 2010 and 2011 of Julio's cousins and that corruption and gang violence are widespread in El Salvador, but the BIA said the evidence was insufficient to show that Petitioners "are personally at risk of torture." R., Vol. I at 4.

Petitioners address whether a public official will acquiesce in their torture, but they offer little discussion addressing the BIA's determination that they had not shown a likelihood of torture. It is insufficient for Petitioners to merely point out that Julio's cousins were killed by gangs four and five years before he was threatened and to broadly state that "[c]ountry conditions evidence corroborates that people who refused the gangs['] demands are tortured and murdered by the gangs as are their family members," Opening Br. at 42. Indeed, one of Julio's cousins was a gang member who was killed for cooperating with police. *See* R., Vol. I at 99-100. Julio's circumstances are not similar. Further, generalized country conditions do not quantify the risk "that a particular person would be in danger of being subjected to torture upon his or her return to that country." *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 592 (3d Cir. 2011) (internal quotation marks omitted); *accord Qorane v. Barr*, 919 F.3d 904, 911 (5th Cir. 2019) (observing

11

that "[g]eneralized country evidence tells us little about the likelihood state actors will torture any particular person"); *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (stating that "generalized evidence of violence and crime in Mexico is not particular to Petitioners and is insufficient to meet th[e] [CAT] standard"); *Lin v. Dep't of Justice*, 432 F.3d 156, 160 (2d Cir. 2005) (requiring "particularized evidence" beyond general country conditions to support a CAT claim).

Because Petitioners have not identified evidence that would compel a reasonable adjudicator to conclude they would more likely than not be tortured upon returning to El Salvador, we cannot overturn the BIA's CAT determination. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (holding that the BIA's CAT "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary" (internal quotation marks omitted)).

## CONCLUSION

We deny the petition for review.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge