Huang v. Garland

BIA
Cortes, IJ
A201 879 594

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of November, two thousand twenty-four.

PRESENT:
> RICHARD C. WESLEY,
> GERARD E. LYNCH,
> RAYMOND J. LOHIER, JR.,
> *Circuit Judges.*

_____

JIANSHENG HUANG,
> *Petitioner,*

v.                                                          **22-6577**
                                                            **NAC**

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:          Jed S. Wasserman, Law Office of Ng & Wasserman, PLLC, New York, NY.

**FOR RESPONDENT:** Brian Boynton, Principal Deputy Assistant Attorney General; Justin Markel, Senior Litigation Counsel; Michelle R. Slack, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED in part and DENIED in part.

Petitioner Jiansheng Huang, a native and citizen of the People's Republic of China, seeks review of a November 22, 2022, decision of the BIA affirming a January 21, 2020, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Jiansheng Huang*, No. A 201 879 594 (B.I.A. Nov. 22, 2022), *aff'g* No. A 201 879 594 (Immig. Ct. N.Y. City Jan. 21, 2020). We assume the parties' familiarity with the underlying facts and procedural history.

We have considered both the IJ's and the BIA's opinions. *See Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). We review factual findings for substantial evidence and questions of law de novo. *See Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009); *Singh v. BIA*, 435 F.3d 216, 219 (2d Cir. 2006) (reviewing relocation determination under the substantial evidence standard).

2

"[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

### I.      Asylum and Withholding of Removal

An applicant for asylum and withholding of removal has the burden to establish past persecution or a well-founded fear or likelihood of future persecution on the basis of a protected category, including religion. *See* 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(A); 8 C.F.R. §§ 1208.13(a)–(b), 1208.16(b). [1]     An applicant who has suffered past persecution is presumed to have the fear of future persecution required for asylum and withholding of removal. 8 C.F.R. §§ 1208.13(b)(1), 1208.16(b)(1)(i). The presumption may be rebutted where a preponderance of the evidence establishes that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country . . . and under all the circumstances, it would be reasonable to expect the applicant to do so." *Id.* §§ 1208.13(b)(1)(i)(B), 1208.16(b)(1)(i)(B). The Department of Homeland Security ("DHS") has the burden to rebut the presumption of future persecution by a

---

[1] Citations are to the regulations at the time of the IJ's decision.

3

preponderance of the evidence. *Id.* §§ 1208.13(b)(1)(ii), 1208.16(b)(1)(ii). Moreover, "[i]n cases in which the persecutor is a government . . . it shall be presumed that internal relocation would not be reasonable," unless DHS rebuts that presumption by a preponderance of the evidence. *Id.* §§ 1208.13(b)(3)(ii), 1208.16(b)(3)(ii). Factors affecting the reasonableness of relocation include, but are not limited to, "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties." *Id.* §§ 1208.13(b)(3), 1208.16(b)(3).

Huang testified to two incidents of persecution while living in Fujian Province. In February 2016, the police arrested him during a raid on a church gathering of him and three others at a private home. The police did not give him food or water, beat him while interrogating him to determine who led the group, and warned him to not attend any future church gatherings. He was detained for three days and was released after his mother paid a fine. He was arrested again the next month for distributing religious leaflets, detained for one day, and released after his mother paid another fine; the police threatened to imprison him

4

if he distributed leaflets again. He then returned to school for two years, and subsequently found a job in Fujian Province. During that period, he did not attend "large [religious] gatherings," but met with his friends approximately six times in a "remote place" "[a]bout half an hour" away by foot or bicycle, with a guard posted outside to look for police. Certified Administrative Record ("CAR") at 157, 121, 127–128. The group eventually stopped meeting out of fear of the police.

The agency found that Huang had demonstrated past persecution, giving rise to a presumption of a well-founded future fear, but found that presumption rebutted. The agency determined that DHS overcame the presumption of persecution by showing by a preponderance of the evidence that Huang could relocate to another part of China to avoid persecution for practicing Christianity. The IJ also concluded that such relocation was reasonable.

In drawing this conclusion, however, both the BIA and the IJ improperly shifted the burden to Huang. The agency found, for example, that there was a lack of evidence of the Chinese government's continuing interest in Huang's activities, a lack of evidence of Huang's status in the community as a religious leader and dissident, and a lack of evidence of a pattern or practice of persecution.

5

CAR at 4, 89–91. Such findings did not give Huang the benefit of the presumptions in his favor, and improperly shifted the burden on him to produce such evidence. *Baba v. Holder*, 569 F.3d 79, 86 (2d Cir. 2009) (remanding where the agency "failed to give [petitioner] the benefit of a presumption of a well-founded fear of future persecution" and noting that "[t]he law is clear that a showing of past persecution shifts the burden to the government on the question of the petitioner's well-founded fear of future persecution").

In addition, the agency's relocation determination relied in significant part on the two-year period following Huang's last arrest, in which he finished his education, found a job, and, to some extent, practiced his Christian faith in "another area of China without incident." CAR 4. All this activity, though, occurred in Fujian Province, where the past persecution also occurred. Thus, the BIA's conclusion rested, in large part, on a factual finding that is not supported by evidence in the record.

Accordingly, we remand for the agency to give Huang the full benefit of the presumptions in his favor and to hold the government to its evidentiary burden. *See Kone v. Holder*, 596 F.3d 141, 150 (2d Cir. 2010) (remanding where the "agency failed to give [petitioner] the full benefit of the regulatory presumption to which

6

she is entitled and to hold the government to its evidentiary burden"); *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005) ("Despite our generally deferential review of IJ and BIA opinions, we require a certain minimum level of analysis from the IJ and BIA opinions denying asylum, and indeed must require such if judicial review is to be meaningful."). "Inadequate analysis or failure to consider important evidence, moreover, are not excused by the fact that a hypothetical adjudicator, applying the law correctly, might also have denied the petition for asylum." *Poradisova*, 420 F.3d at 77 (internal quotation marks and citation omitted).

## II. CAT Relief

We deny the petition as to CAT relief. A CAT applicant has the burden to establish that it is "more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Although evidence of past torture is one factor to consider in determining the likelihood of future harm, there is no presumption of future torture based on past harm. *Id.*; *see also id.* § 1208.16(c)(3)(ii). Accordingly, Huang had the burden to establish that someone in his "particular alleged circumstances" is more likely than not to be tortured. *Mu Xiang Lin v. U.S. Dep't of Just.*, 432 F.3d 156, 160 (2d Cir. 2005). The evidence does not compel a conclusion that he met that burden. *Quintanilla-Mejia*

7

*v. Garland*, 3 F.4th 569, 592 (2d Cir. 2021) (explaining that a petitioner "cannot secure CAT relief by pointing to conflicting evidence that might support—but not compel—a different conclusion").

Assuming without deciding that the conduct Huang suffered—interrogations where he suffered blows to the head, and was knocked and held to the ground—constitutes torture, *see Khouzam v. Ashcroft*, 361 F.3d 161, 169 (2d Cir. 2004) (explaining that "the CAT defines torture as 'any act by which severe pain or suffering . . . is intentionally inflicted on a person for such purposes as obtaining from him . . . information or a confession'" (citation omitted)), Huang still did not establish that he would more likely than not be tortured in the future. The record reflects persecution of Christians in China, but such general evidence is insufficient to show that torture is "more likely than not" given the evidence that tens of millions of Christians practice in China without incident, particularly as Huang did not allege that the police were monitoring him or harassing him in the two years before he left China. *See Mu Xiang Lin*, 432 F.3d at 160; *see also Zelaya-Moreno v. Wilkinson*, 989 F.3d 190, 205 (2d Cir. 2021) (holding that absent "particularized evidence" a petitioner's "generalized statements about the pervasiveness of gangs and gang violence" did not show error in BIA's conclusion

8

regarding the likelihood of torture); *Chun Gao v. Gonzales*, 424 F.3d 122, 128–29 (2d Cir. 2005) (explaining that a CAT claimant must show "that there is greater than a fifty percent chance . . . that he will be tortured upon return to his . . . country of origin").

For the foregoing reasons, the petition for review is GRANTED in part with respect to the BIA's ruling denying Huang's application for asylum and withholding of removal, and REMANDED for further consideration of asylum and withholding of removal. The petition is DENIED in part as to Huang's CAT claim. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court