23-6338-ag
*Angamarca-Bueno v. Garland*

BIA
McFarland, IJ
A215 660 819

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of December, two thousand twenty-four.

PRESENT:
> PIERRE N. LEVAL,
> JOSEPH F. BIANCO,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

_____

FAUSTO ENRIQUE ANGAMARCA-BUENO,

> *Petitioner*,

v.                                                              **23-6338-ag**

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,

> *Respondent*.

_____

**FOR PETITIONER:** Michael Borja, Borja Law Firm, Jackson Heights, NY.

**FOR RESPONDENT:** Brian M. Boynton, Principal Deputy Assistant Attorney General; Stephen J. Flynn, Assistant Director; Lynda A. Do, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Fausto Enrique Angamarca-Bueno, a native and citizen of Ecuador, seeks review of a March 9, 2023, decision of the BIA affirming a July 24, 2019, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *See In re Fausto Enrique Angamarca-Bueno*, No. A215 660 819 (B.I.A. Mar. 9, 2023), *aff'g* No. A 215 660 819 (Immig. Ct. N.Y. City July 24, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

"We review the agency's factual findings to determine whether they are supported by substantial evidence and its conclusions of law *de novo*. Because the BIA adopted and supplemented the decision of the IJ, we have reviewed the decision of the IJ as supplemented by the BIA." *Niang v. Holder*, 762 F.3d 251, 253

2

(2d Cir. 2014) (citations omitted). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## I.    Asylum and Withholding of Removal

An applicant for asylum must establish past persecution or "a well-founded fear of future persecution." 8 C.F.R. § 1208.13(b). An applicant for withholding of removal must establish past persecution or "that it is more likely than not that he" will be persecuted upon removal to his country. 8 U.S.C. § 1208.16(b). Contrary to Angamarca-Bueno's argument, *both* forms of relief require the applicant to "establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i); *Quituizaca v. Garland*, 52 F.4th 103, 114 (2d Cir. 2022) (finding "one central reason" requirement applicable to withholding claims).

Angamarca-Bueno contends that he was and will be persecuted based on his membership in two particular social groups: witnesses to police corruption and witnesses to crime. "To succeed on a particular social group claim, the applicant must establish both that the group itself was cognizable, and that the alleged

3

persecutors targeted the applicant on account of her [or his] membership in that group." *Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014) (quotation marks and citations omitted). We "review *de novo* the legal determination of whether a group constitutes a 'particular social group.'" *Id.* "To constitute a particular social group, a group must be: (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Hernandez-Chacon v. Barr*, 948 F.3d 94, 101 (2d Cir. 2020) (quotation marks and citation omitted). A group "is socially distinct if the people of a given society would perceive a proposed group as sufficiently separate or distinct." *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 588 (2d Cir. 2021) (quotation marks and citation omitted). "[A] persecutor's perception alone is not enough, by itself, to establish a cognizable social group." *Id.* (quotation marks and citation omitted).

The agency did not err in concluding that Angamarca-Bueno's proposed social groups were not cognizable because he did not establish that they were socially distinct. Angamarca-Bueno testified that two particular police officers wanted to recruit him to sell drugs on their behalf; when he refused, they beat him. When Angamarca-Bueno went to the police station intending to report them the

following month, the same officers saw him and told him they would kill him if they saw him at the police station again. A few days later, these two officers followed Angamarca-Bueno and beat him again. But Angamarca-Bueno does not contend that the two officers attacked him *because of his membership in any cognizable group*; to the contrary, his testimony suggests that he was singled out for attack. His sister's letter in support of his application asserts that she believed the officers "targeted him because they thought he would be able to sell drugs to the people in our community who knew, loved, and respected him." Certified Administrative Record ("CAR") at 186. Angamarca-Bueno makes no claim that these two officers – or law enforcement officers generally – have attacked others who were aware of their corruption or who witnessed crimes.

Angamarca-Bueno provided no evidence that those who have witnessed crime or police corruption (or those who have threatened to report it) are a socially distinct group in Ecuador. He submitted a letter from his aunt in which she stated that she had "heard horror stories in our neighborhood regarding police corruption," but does not report attacks on those aware of the corruption. CAR at 179. Angamarca-Bueno's niece also wrote a letter describing "how corrupt the police were," that they accepted bribes and would "hang[ ] out with gang

5

members . . . because they know they would not get into trouble."   CAR at 172.

Again, the letter makes no reference to attacks on those who witness corruption or

crime.   Likewise, the country conditions evidence in the record does not identify

witnesses to police corruption or crime as being the targets of persecution, and

does not support a finding that Ecuadorian society views people who witness

corruption and crime, either by seeing it occur or being victims of it, as socially

distinct.   *See Hernandez-Chacon*, 948 F.3d at 101–02 (concluding that petitioner

failed to provide sufficient evidence that her proposed social group was socially

distinct where country conditions evidence did not address the proposed social

group).

Accordingly, the agency did not err in denying asylum and withholding of

removal absent evidence that Ecuadorian society in general perceives witnesses to

corruption or crime as distinct groups.   *See Quintanilla-Mejia*, 3 F.4th at 591

(holding that gang's hostility to a group of people doing specific work was

insufficient on its own to deem the group socially distinct).

## II.   CAT Relief

On appeal to the BIA, Angamarca-Bueno mentioned the denial of his CAT

claim, but did not otherwise argue it separately from asylum and withholding of

6

removal; the claim therefore is arguably unexhausted. S*ee Ud Din v. Garland*, 72 F.4th 411, 419–20 & n.2 (2d Cir. 2023) (noting that issue exhaustion is "mandatory in the sense that a court must enforce the rule if a party properly raises it." (quotation marks and citation omitted)); *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005) (deeming argument abandoned where "only a single conclusory sentence" was devoted to it). We address the CAT claim because the BIA did not find it waived, and the Government does not raise exhaustion as a defense.

There is no nexus requirement for a CAT claim. Instead, an applicant for CAT relief has the burden to prove he will "more likely than not" be tortured "by, or at the instigation of, or with the consent or acquiescence of, a public official." 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). The more likely than not standard "requires the applicant to establish that there is greater than a fifty percent chance . . . that he will be tortured." *Chun Gao v. Gonzales*, 424 F.3d 122, 128–29 (2d Cir. 2005) (quotation marks and citation omitted). When determining the likelihood of future torture, the agency considers, among other things, "[e]vidence of past torture," the ability to internally relocate, "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal," and "[o]ther relevant

7

information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3). Substantial evidence supports the agency's conclusion that Angamarca-Bueno did not establish that he will more likely than not be tortured. *See Quintanilla-Mejia*, 3 F.4th at 592–93 (applying substantial evidence review to a CAT claim).

First, as the BIA concluded, Angamarca-Bueno was not tortured. "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted." 8 C.F.R. § 1208.18(a)(1). "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." *Id.* § 1208.18(a)(2). Angamarca-Bueno was beaten, but his injuries were not severe. *See* CAR at 86 (Tr.) (Q: "Sir, did you seek any physical treatment for any of the injuries you suffered during the two assaults?" A: "I didn't go to the hospital because the wounds were not so severe, so I went home to recover."), 208 (App.) ("My injuries were not serious and so I did not go to the hospital."). On this record, the agency did not err in concluding that his past harm did not constitute torture. *See Jian Qiu Liu v. Holder*, 632 F.3d 820, 822 (2d Cir. 2011) (finding no error in agency's conclusion that petitioner had not demonstrated persecution where

8

petitioner's injuries "required no formal medical attention and had no lasting physical effect"); *Kyaw Zwar Tun v. U.S. INS*, 445 F.3d 554, 567 (2d Cir. 2006) ("[T]orture requires proof of something more severe than the kind of treatment that would suffice to prove persecution.").

Second, as to future torture, the letters from Angamarca-Bueno's family state that the two officers are looking for him to kill him, and that he is in danger. But the letters do not provide details about when or how often the police are seeking him out or allege that the police have tortured anyone else for refusing to assist them. *See Mu Xiang Lin v. U.S. Dep't of Just.*, 432 F.3d 156, 160 (2d Cir. 2005) (concluding that letters from family of petitioner stating that she would be imprisoned and tortured upon removal were insufficient to carry her burden of demonstrating that she more likely than not would be tortured if imprisoned).

Moreover, the 2018 State Department Human Rights Report on Ecuador does not support a conclusion that Angamarca-Bueno will likely be tortured. It states that "there were a few reports police officers and prison guards tortured and abused suspects and prisoners," but that the government was investigating these reports. CAR at 114. It also reports that although there were numerous reports of governmental corruption, Ecuadorian "law provides criminal penalties for

9

corruption by officials, and the government took steps to implement the law effectively." CAR at 129. Several articles report on the Ecuadorian government's efforts to combat the drug trade, *see id.* at 147–150, 154, 157–60, including its arrest and prosecution of a corrupt police captain, and an April 2017 report stated that "61 police officers have been removed from their posts since 2013 because of alleged links to drug traffickers," *id.* at 155. Neither this evidence nor the letters from Ecuador compel a conclusion different from the agency's conclusion that Angamarca-Bueno did not establish that he is more likely than not to be tortured. *See Quintanilla-Mejia*, 3 F.4th at 592 (A petitioner "cannot secure CAT relief by pointing to conflicting evidence that might support—but not compel—a different conclusion.").

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

10