22-6326-ag
*Khan v. Garland*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**<u>SUMMARY ORDER</u>**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of December, two thousand twenty-four.

PRESENT: JOHN M. WALKER, JR.,
DENNIS JACOBS,
SARAH A. L. MERRIAM,
*Circuit Judges*.

_____

MOHAMMAD MONAZIR KHAN,

 *Petitioner*,

   v.               22-6326-ag

MERRICK B. GARLAND, United States
Attorney General,

 *Respondent*.

_____

FOR PETITIONER:       Michael E. Marszalkowski, Serotte Law Firm
               LLC, Buffalo, NY.

1

FOR RESPONDENT:                     Brian Boynton, Principal Deputy Assistant
                                    Attorney General; Bernard A. Joseph, Senior
                                    Litigation Counsel; Craig W. Kuhn, Trial
                                    Attorney, Office of Immigration Litigation,
                                    United States Department of Justice,
                                    Washington, D.C.


**UPON DUE CONSIDERATION** of this petition for review of a Board of

Immigration Appeals ("BIA") decision, it is hereby **ORDERED, ADJUDGED, AND**

**DECREED** that the petition for review is **DENIED**.

Petitioner Mohammad Monazir Khan, a native and citizen of India, seeks review

of a June 14, 2022, decision of the BIA affirming a May 17, 2019, decision of an

Immigration Judge ("IJ") denying his application for asylum, withholding of removal,

and relief under the Convention Against Torture ("CAT"). *See In re Mohammad Monazir*

*Khan,* No. A206 437 749 (B.I.A. June 14, 2022), *aff'g* No. A206 437 749 (Immigr. Ct.

Buffalo May 17, 2019). We assume the parties' familiarity with the underlying facts and

procedural history.

We have reviewed the IJ's decision as adopted and supplemented by the BIA. *See*

*Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review factual findings for

substantial evidence and questions of law *de novo*. *See Yanqin Weng v. Holder*, 562 F.3d

510, 513 (2d Cir. 2009). "[T]he administrative findings of fact are conclusive unless any

reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C.

§ 1252(b)(4)(B).

## I.      Asylum

An applicant for asylum must "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the [applicant's] arrival in the United States." *Id.* § 1158(a)(2)(B). Failure to meet the filing deadline may be excused if the applicant "demonstrates to the satisfaction of the Attorney General . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum." *Id.* § 1158(a)(2)(D). "'[C]hanged circumstances' . . . shall refer to circumstances materially affecting the applicant's eligibility for asylum" and "may include . . . [c]hanges in conditions in the applicant's country of nationality." 8 C.F.R. § 1208.4(a)(4)(i). "The applicant shall file an asylum application within a reasonable period given those 'changed circumstances.'" *Id.* § 1208.4(a)(4)(ii).

Our jurisdiction to review the agency's determination as to the timeliness of an application, or whether changed circumstances excused any delay, is limited to constitutional claims and questions of law, including "the application of law to undisputed or established facts. . . ." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 228 (2020); *see also* 8 U.S.C. §§ 1158(a)(3), 1252(a)(2)(D). A question of law may arise where the agency applied the wrong legal standard, *see Barco-Sandoval v. Gonzales,* 516 F.3d 35, 40 (2d Cir. 2007), or where the agency "totally overlooked" or "seriously mischaracterized" important facts, *Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009).

Khan does not acknowledge or address the jurisdictional limitation on our review; instead, as the basis for appellate jurisdiction, he states: "The Petitioner raises matters of

3

law and claims based on erroneous findings of fact and/or mixed questions of fact and law." Petitioner's Br. at 3. This conclusory assertion is insufficient to identify a question over which we have jurisdiction. *See Xiao Ji Chen v. Gonzales*, 471 F.3d 315, 331 (2d Cir. 2006) ("[P]etitioner's mere assertion that the IJ and the BIA 'fail[ed] to apply the law' does not convert a mere disagreement with the IJ's factual findings and exercise of discretion into a constitutional claim or a question of law." (footnote omitted)).

The IJ made express factual findings about country conditions in India relating to the risk of religious violence against Muslims over the time period since Khan's arrival in the United States – indeed, the IJ conducted a detailed inquiry into the issue, evaluating numerous sources. *See* Certified Administrative Record ("CAR") at 66-70. We lack jurisdiction to review those factual findings.

And even if we assume jurisdiction[1] to consider whether the evidence presented met the standard for changed country conditions, we find no error in the agency's decision. The IJ found that a "breadth of documentation . . . establishes that anti-Muslim violence has been in existence [in India] at a very high level since the late 1990s as well as has continued throughout the time that respondent has been in the United States." CAR

---

[1] "Our assumption of jurisdiction to consider first the merits is not barred where the jurisdictional constraints are imposed by statute, not the Constitution, and where the jurisdictional issues are complex and the substance of the claim is, as here, plainly without merit." *Ivanishvili v. U.S. Dept. of Justice*, 433 F.3d 332, 338 n.2 (2d Cir. 2006). It is appropriate for us to consider the merits in this case "because neither party has addressed the complex question of whether" the Supreme Court's recent decision in *Wilkinson v. Garland*, 601 U.S. 209 (2024), "impacts our jurisdiction in this case." *Ivanishvili*, 433 F.3d at 338 n.2.

at 70. Given this finding, which is well-supported by the record, we find no error in the agency's legal conclusion that Khan failed to meet his burden of establishing "the existence of changed circumstances which materially affect [his] eligibility for asylum." 8 U.S.C. § 1158(a)(2)(D); *see also Matter of D-G-C-*, 28 I. & N. Dec. 297, 300 (B.I.A. 2021) ("[T]o be material, changed circumstances must significantly affect the applicant's eligibility for asylum as a consequence of newly established facts or a new legal basis for relief."). Accordingly, the asylum petition is denied as time-barred.

## II. Withholding of Removal and CAT Relief

We also deny the petition as to withholding of removal and CAT relief.

Khan did not separately address withholding of removal in his appellate brief; he has thus abandoned any challenge to the BIA's finding that he waived that argument. *See Prabhudial v. Holder*, 780 F.3d 553, 555-56 (2d Cir. 2015) (Where BIA finds a claim waived, "this Court's review is limited to whether the BIA erred in deeming the argument waived."); *Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("[A]n appellant's failure to make legal or factual arguments constitutes abandonment." (quotation marks and citation omitted)).

The CAT claim fails on the merits. An applicant for CAT relief "bears the burden of proving the likelihood of future torture by or with the acquiescence of government officials." *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 592 (2d Cir. 2021). A "likelihood of torture" in this context requires a showing that the applicant will "more likely than not" be tortured. 8 C.F.R. § 1208.16(c)(2). "Torture is defined as any act by which severe

5

pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . ."
*Id.* § 1208.18(a)(1). "In assessing whether it is more likely than not that an applicant
would be tortured," the agency "shall" consider "all evidence relevant to the possibility of
future torture . . . including . . . [e]vidence of past torture inflicted upon the applicant,"
the applicant's ability to relocate within the country to a safer area, "[e]vidence of gross,
flagrant or mass violations of human rights within the country of removal," and "[o]ther
relevant information regarding conditions in the country of removal." *Id.* § 1208.16(c)(3).

The agency found that the evidence submitted was insufficient to support a finding
that Khan would "more likely than not" be tortured if he returned to India. Khan argues
that he is likely to be tortured because the Indian government will know he has been
away for decades and that he has applied for asylum, and it could arrest him on a pretext,
a risk which is "heightened since he is a Muslim and not a member or supporter of the
ruling BJP political party." Petitioner's Br. at 13.

As to the first issue, Khan asserts that may have to disclose that he applied for
asylum in another country in order to apply for an Indian passport after his long absence.[2]
But he offered no evidence that persons returning to India after seeking asylum elsewhere
are subject to persecution. Indeed, although he testified that he fears for his life "[f]irst
and foremost . . . because people in power . . . would be suspicious as to why I was away
[from India] for this long," CAR at 131, he conceded that others "who have come to the

---

[2] Khan provided evidence that such disclosure was required in 2000 and alleged he would have
to make the disclosure again, but he did not corroborate that the passport application currently
requires such disclosure.

United States for various reasons . . . are not targeted in any way" when they return to India, CAR at 150.

As to the second issue, his religion, Khan testified that he is a practicing Muslim but offered no evidence that Indian authorities would be aware of that if he returned or that he would be subject to torture as a result. The record does reflect that there is violence against Muslims in India. For instance, the 2019 annual report of the U.S. Commission on International Religious Freedom asserted that some Indian states had "systematic, ongoing, egregious violations of religious freedom," but that "[r]eligious freedom conditions varied dramatically from state to state." CAR at 162 (quotation marks omitted). However, CAT relief requires the applicant to show "that someone in his particular alleged circumstances is more likely than not to be tortured," a showing that requires "particularized evidence" *beyond* general country conditions. *Mu Xiang Lin v. Gonzales*, 432 F.3d 156, 160 (2d Cir. 2005) (emphasis and citation omitted); *see also Zheng Xuan Xu v. Lynch*, 609 F. App'x 40, 42 (2d Cir. 2015) (summary order) (finding applicant ineligible for CAT relief because he "did not present any particularized evidence showing that he would be subject to torture").

The evidence presented does not establish that *Khan himself* is more likely than not to be tortured because he is Muslim. There is no evidence that Khan's Muslim family members residing in India, for example, have been victims of anti-Muslim violence.[3] *See*

---

[3] Khan's brother disappeared in 1993, but Khan did not allege that incident was connected to violence against Muslims.

*Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir. 1999) (reasoning that lack of harm to similarly situated family members remaining in petitioner's native country undercut petitioner's claim of a well-founded fear of future persecution). Further, some evidence suggests that violence has been targeted at Muslims involved in specific industries like meatpacking and cattle farming that conflict with Hindu religious beliefs – industries to which Khan has no connection. *See* CAR at 162.

In sum, we find no error in the agency's conclusion that Khan did not show that he, personally, would "more likely than not" be tortured if he returned to India. *See Lin*, 432 F.3d at 160; *Chun Gao v. Gonzales*, 424 F.3d 122, 128 (2d Cir. 2005) (A CAT claimant must show "that there is greater than a fifty percent chance" he will be tortured. (citation omitted)). Because Khan's failure to establish a likelihood of torture is dispositive of his claim, we need not reach the agency's alternative finding as to whether any "future torture [would be] by or with the acquiescence of government officials." *Quintanilla-Mejia*, 3 F.4th at 592; *see also I.N.S. v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

For the foregoing reasons, the petition for review is **DENIED**. All pending motions and applications are **DENIED** and stays **VACATED**.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

8